BOWEN, Appellee and Cross–Appellant,

v.

BOWEN, Appellant and Cross–Appellee.

[Cite as *Bowen v. Bowen* (1999), 132 Ohio App.3d 616.]

Court of Appeals of Ohio,
Ninth District, Medina County.

Nos. 2720–M and 2733–M.

Decided Feb. 9, 1999.

618

*Chris D. Carey,* for appellee and cross-appellant Susan M. Bowen.

*Joseph G. Stafford* and *John J. Dyer III,* for appellant and cross-appellee Kim D. Bowen.

CARR, Judge.

Plaintiff and defendant both appeal from a judgment of divorce granted by the Medina County Court of Common Pleas. Together, the parties raise a total of fifteen assignments of error. This court affirms in part, reverses in part, and remands the cause for further proceedings.

## I Facts

Plaintiff Susan Bowen and defendant Kim Bowen had been married since 1975, when plaintiff filed for divorce on March 16, 1995. Over the course of their marriage, they produced three children, who were at the time of the divorce aged sixteen, twelve, and nine. The trial court bifurcated the proceedings, issuing separate orders granting the divorce, dividing the property and setting spousal support, and establishing the respective parental rights and responsibilities, including child support. That court's combined orders awarded defendant primary custody of the three children following the completion of the then-current school year, divided the marital property after allowing for the repayment of debts that the court found were owed to the parties' respective parents, and awarded plaintiff spousal support while providing that she would pay defendant child support.

Defendant filed an initial appeal to this court, after which the trial court modified its earlier order regarding the division of a stock investment account. Defendant then also appealed the trial court's modification. Both appeals were consolidated. Defendant raises a combined total of twelve assignments of error. Plaintiff cross-appealed and raises three assignments of error. The assignments of error have been rearranged for ease of discussion.

## II Discussion

### Defendant's First Assignment of Error

"The trial court abused its discretion by failing to award spousal support based on need."

### Defendant's Second Assignment of Error

"The trial court abused its discretion by awarding Mrs. Bowen lifetime spousal support."

### Defendant's Third Assignment of Error

"The trial court abused its discretion by failing to indicate a sufficient basis for its spousal support."

*Plaintiff's First Assignment of Error*

"The trial court erred by modifying its February 5, 1997 spousal support award in its May 1997 journal entry."

Because defendant's first three assignments of error and plaintiff's first assignment of error all relate to spousal support, this court will address them together.

R.C. 3105.18(B) permits a court to award reasonable spousal support, while R.C. 3105.18(C) controls the determination of such support. R.C. 3105.18(C)(1) provides:

"In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:

"(a) The income of the parties * * *;

"(b) The relative earning abilities of the parties;

"(c) The ages and the physical, mental, and emotional conditions of the parties;

"(d) The retirement benefits of the parties;

"(e) The duration of the marriage;

"(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;

"(g) The standard of living of the parties established during the marriage;

"(h) The relative extent of education of the parties;

"(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;

"(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;

"(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;

"(l) The tax consequences, for each party, of an award of spousal support;

"(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;

"(n) Any other factor that the court expressly finds to be relevant and equitable."

An award of spousal support under this statute is discretionary and will be reversed on appeal only for an abuse of that discretion. *Dus v. Dus* (Oct. 21, 1998), Summit App. No. 18770, unreported, 1998 WL 733724. An abuse of discretion is more than a mere error of law or judgment; the trial court's attitude must have been unreasonable, unconscionable, or arbitrary. *In re Jane Doe 1* (1991), 57 Ohio St.3d 135, 137, 566 N.E.2d 1181, 1184. In applying this standard, a reviewing court is not free to substitute its judgment for that of the trial court. *Id.* at 137–138, 566 N.E.2d at 1184.

In the instant case, the trial court heard testimony concerning spousal support in April 1996. Thereafter, the court established in February 1997 that plaintiff would receive support payments of $4,400 per month for a period of eighty-four months. At the expiration of this period, plaintiff would then receive $2,500 per month until either her death, remarriage, or cohabitation. In May 1997, however, the court modified the amount of spousal support for the eighty-four-month period, reducing support to $4,000 per month.

Defendant argues in his first assignment of error that the trial court improperly failed to base the award of spousal support on need. While need was previously considered under the old statutory scheme, this court has made clear "that under R.C. 3105.18, as modified in April 1991, 'need' is no longer the basis for a spousal support award. [Nor] is it significant whether [the spouse] 'deserves' the support. The only relevant question is what is 'appropriate and reasonable' under the circumstances." (Citation omitted.) *Schindler v. Schindler* (Jan. 28, 1998), Summit App. No. 18243, unreported, 1998 WL 46764. Further, "once the fourteen factors [under R.C. 3105.18(C)(1) ] have been considered, the amount of spousal support is within the sound discretion of the trial court." *Young v. Young* (Dec. 29, 1993), Lorain App. No. 93CA005554, unreported, 1993 WL 548765. Defendant's contention is therefore without merit.

In defendant's second assignment of error, he argues that the trial court erred in failing to establish a termination date for the award of spousal support. However, no specific termination date was required under the circumstances of the instant case. This court has previously noted:

"[T]he Ohio Supreme Court [has] held that spousal support awards, as a general rule, should terminate upon a date certain in order to place a definitive limit on the parties' rights and responsibilities. However, *potential exceptions to this rule include cases involving a marriage of long duration* or where a homemaker-spouse has little opportunity to develop meaningful employment outside the home." (Emphasis added.) *Berthelot v. Berthelot* (Apr. 15, 1998),

Summit App. No. 18331, unreported, 1998 WL 178561, citing *Kunkle v. Kunkle* (1990), 51 Ohio St.3d 64, 554 N.E.2d 83, paragraph one of the syllabus.

Therefore, as the Tenth District has explained, "a marriage of long duration 'in and of itself would permit a trial court to award spousal support of indefinite duration without abusing its discretion or running afoul of the mandates of *Kunkle.*'" *Vanke v. Vanke* (1994), 93 Ohio App.3d 373, 377, 638 N.E.2d 630, 632, quoting *Corpac v. Corpac* (Feb. 27, 1992), Franklin App. No. 91AP–1036, unreported, 1992 WL 41244. In the instant case, the parties' marriage of twenty years was one of long duration that qualified as a *Kunkle* exception to the requirement of a definite termination date. See *Berthelot* (twenty years); *Soley v. Soley* (1995), 101 Ohio App.3d 540, 550, 655 N.E.2d 1381, 1388 (twenty years); *Vanke*, 93 Ohio App.3d at 376, 638 N.E.2d at 632 (twenty-two years); *Leversee v. Leversee* (Mar. 25, 1993), Franklin App. No. 92AP–1307, unreported, 1993 WL 87005 (twenty-one years); *Corpac* (twenty-five years); *Schmidt v. Schmidt* (Oct. 8, 1991), Franklin App. No. 91AP–547, unreported, 1991 WL 325788 (twenty-two years). Further, this court also notes the holding of *Donese v. Donese* (Apr. 10, 1998), Greene App. No. 97–CA–70, unreported, 1998 WL 165012, in which the Second District held that a trial court's failure to establish a termination date for spousal support is not an award for life, where the court retains jurisdiction to reduce or terminate the support award at any time based on a change in either party's circumstances. Here, the trial court specifically retained such jurisdiction in its order, and even lowered the amount of spousal support during these proceedings. Defendant's second contention is therefore rejected.

Defendant's assertion in his third assignment of error that the trial court's explanation of the basis for the spousal support award was insufficient is also without merit. Defendant argues both that the trial court's explanation was insufficient and that the court ignored important pieces of evidence in fashioning the award. This court is not convinced.

The February 5, 1997 order clearly set forth the court's basis for the award, stating:

"The court considered all of the spousal support factors and finds that, based upon the incomes of the parties, their earning potential, Susan's need and desire for additional education, Kim's attaining all of his post-high school education during the marriage, and the parties' contributions during the marriage, that spousal support is appropriate and reasonable. (R.C. 3105.18[C][1].)"

As defendant correctly contends, "the trial court must indicate the basis for its award in sufficient detail to enable a reviewing court to determine that the award is fair, equitable and in accordance with the law." *Kaechele v. Kaechele* (1988), 35 Ohio St.3d 93, 518 N.E.2d 1197, paragraph two of the syllabus. The trial court

did just that, stating that its decision involved the factors set forth for consideration in R.C. 3105.18(C)(1) and specifically emphasizing those factors present in R.C. 3105.18(C)(1)(a), (b), (h), and (j).

▮ This court has held that "the trial court is not required to make individual findings of fact as to each factor, so long as there is some evidence in the record going to each one." *Young, supra.* While the trial court explained some factors in greater detail than other factors, this court finds no dereliction of the statutorily imposed duty. Defendant's allegation that "[t]he entire basis for the court's substantial spousal support award is contained in the [above quotation]" and his reliance upon *Gullia v. Gullia* (1994), 93 Ohio App.3d 653, 639 N.E.2d 822, are, therefore, in error. First, the trial court made extensive findings of fact that set forth relevant factors that defendant erroneously claims were ignored, including, but not limited to, the age and physical condition of the parties. Second, this court finds the instant case distinguishable from *Gullia.* In *Gullia,* the Eighth District found in part that the trial court had "failed to adequately determine the relative earning capacity of the parties [and] neglected to make definite findings as to the relative assets and liabilities of the parties." *Id.* at 659, 639 N.E.2d at 825. Such was not the case here. The voluminous record indicates that the trial court heard extensive testimony on these issues, resulting in the sixteen-page order that described in adequate detail the most relevant considerations. This court cannot say that the trial court abused its discretion.

However, plaintiff's first assignment of error regarding the May 1997 modification of support is well taken. Plaintiff argues that the trial court, in its February 1997 order, left the issue of child custody for later resolution and proceeded to award spousal support. Citing this court's decisions in *Mottice v. Mottice* (1997), 118 Ohio App.3d 731, 693 N.E.2d 1179, and *Towne v. Towne* (Nov. 27, 1996), Summit App. No. 17772, unreported, 1996 WL 688155, plaintiff contends that a spousal support award may only be modified for a substantial change in a party's circumstances that was not contemplated at the time of the original award of spousal support. Further, plaintiff contends that defendant's income was demonstrated to be higher than initially stated by the trial court, yet the court, nonetheless, proceeded to grant defendant's motion and reduce the amount of monthly support paid to plaintiff.

R.C. 3105.18 provides:

"(E) * * * [I]f a continuing order for periodic payments of money as spousal support is entered in a divorce or dissolution of marriage action that is determined on or after January 1, 1991, the court that enters the decree of divorce or dissolution of marriage does not have jurisdiction to modify the amount or terms

of the * * * spousal support unless the court determines that the circumstances of either party have changed and unless * * *

"(1) In the case of a divorce, the decree or a separation agreement of the parties to the divorce that is incorporated into the decree contains a provision specifically authorizing the court to modify the amount or terms of * * * spousal support.

" * * * *

"(F) For purposes of divisions (D) and (E) of this section, a change in the circumstances of a party includes, but is not limited to, any increase or involuntary decrease in the party's wages, salary, bonuses, living expenses, or medical expenses."

■■■ This court has stated that "[g]iven the application of the statutory scheme and assuming that the factual inquiries are supported by competent credible evidence, the finding as to whether there has been a change in circumstances that, ultimately, warrants modification or termination will not be reversed absent an abuse of discretion." *Mottice,* 118 Ohio App.3d at 735, 693 N.E.2d at 1182, citing *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 218, 5 OBR 481, 482, 450 N.E.2d 1140, 1141.

■■■ The trial court expressly stated that it retained the authority to modify the initial award of spousal support in its February 1997 order in accordance with R.C. 3105.18(E)(1). Pursuant to this provision, the court reduced the award of support by $400 for the eighty-four-month period. However, the court failed to provide in its entry any reasons for this decision that would constitute a change of circumstances under R.C. 3105.18(F). This failure to make the necessary journalized findings that would have permitted modification of the award of support renders the trial court's action an abuse of discretion; the court, with no apparent justification, engaged in an action that, while not necessarily unreasonable or unconscionable, was arbitrary on its face.

Defendant's first three assignments of error are rejected, while plaintiff's first assignment of error is well taken.

*Defendant's Fourth Assignment of Error*

"The trial court abused its discretion by selecting the first day of trial as the termination date of marriage."

In his fourth assignment of error, defendant avers that the trial court improperly selected the trial date as the termination date of the marriage. In so doing, defendant argues, the trial court ignored the parties' claimed de facto termination in March 1995 and thereby prejudiced defendant by including within the alloca-

tion of property the post-March 1995 increased value of certain assets. This court disagrees.

R.C. 3105.171(A)(2) creates "a presumption that the proper date for termination of marriage is the date of the final divorce hearing." *Kohler v. Kohler* (Aug. 14, 1996), Lorain App. No. 96CA006313, unreported, 1996 WL 455850. R.C. 3105.171(A)(2) provides:

" 'During the marriage' means whichever of the following is applicable:

"(a) Except as provided in division (A)(2)(b) of this section, the period of time from the date of the marriage through the date of the final hearing in an action for divorce or in an action for legal separation;

"(b) If the court determines that the use of either or both of the dates specified in division (A)(2)(a) of this section would be inequitable, the court may select dates that it considers equitable in determining marital property. If the court selects dates that it considers equitable in determining marital property, 'during the marriage' means the period of time between those dates selected and specified by the court."

This court has previously recognized that while the statute permits the trial court to select the date of separation as a de facto termination date in place of the statute's presumption, such action is clearly not mandated:

"[T]he Ohio Supreme Court [has] held that in some instances, it *may* be more equitable to value the parties' assets at the time of their separation, or de facto termination of the marriage, rather than at the time of the divorce. The court did not hold, however, that a trial court *must* choose the separation date as the de facto termination date for valuation purposes." (Emphasis *sic.*) *Wilson v. Wilson* (July 24, 1996), Wayne App. No. 95CA0089, unreported, 1996 WL 411631, citing *Berish v. Berish* (1982), 69 Ohio St.2d 318, 320, 23 O.O.3d 296, 298, 432 N.E.2d 183, 185.

In the instant matter, this court finds that the trial court was not obligated to reject the statutory presumption in determining the marriage termination date simply because one or both of the parties felt that the functioning of the parties as a marital unit had, for all intents and purposes, ceased. Rather, the trial court was faced with a discretionary matter grounded in equitable considerations. The Supreme Court of Ohio has noted:

"The choice of a date as of which assets available for equitable distribution should be identified and valued must be dictated largely by pragmatic considerations. * * * [T]he precise date upon which any marriage irretrievably breaks down is extremely difficult to determine, and this court will avoid promulgating any unworkable rules with regard to this determination. *It is the equitableness*

*of the result reached that must stand the test of fairness on review.*" (Emphasis added.) *Berish,* 69 Ohio St.2d at 319–320, 23 O.O.3d at 297, 432 N.E.2d at 184–185.

While testimony by both parties indicated that they had essentially ceased to function as a marital unit following their 1995 separation and that defendant considered the marriage to be over in all ways, save for a formal decree, the court was not required to accept such testimony as dispositive of the issue. What is equitable, and not what the parties believe or desire, determines what date a trial court shall designate as the end of a marriage.

This court has noted that "[a] trial court's determination of the dates used in accordance with R.C. 3105.171(A)(2) is reviewed on appeal under an abuse of discretion standard." *Dus v. Dus* (Oct. 21, 1998), Summit App. No. 18770, unreported, 1998 WL 733724. Given the discretionary power of the trial court in this area, the decision to select the first day of trial as the marriage's termination date was not unreasonable, unconscionable, or arbitrary. While evidence was offered that could have supported a determination by the trial court that the marriage had ended in March 1995, the trial court acted within its discretion in selecting a date it felt satisfied the equitable considerations of the case most effectively.[1]

Defendant's fourth assignment of error is overruled.

### Defendant's Fifth Assignment of Error

"The trial court abused its discretion in distributing the Robert Thomas account to the parties."

### Defendant's Eighth Assignment of Error

"The trial court abused its discretion by modifying its property division award in the June 20, 1997 order."

In defendant's fifth and eighth assignments of error, he argues, respectively, that the trial court improperly divided the Robert Thomas account funds, in light of the alleged purpose of the account, and was later without jurisdiction to issue an order dividing the increased contents of the account between the two parties.

In regard to defendant's fifth assignment of error, he argues that the account was established by the parties jointly for the sole purpose of providing for the

---

**1.** This court declines to set forth strict guidelines on what does and does not constitute sufficient circumstances to warrant accepting an alleged de facto termination as the end of a marriage; the holding herein is limited to the facts of the instant case. Equitable results demand responsiveness to facts, as each case is context-specific and must rely upon the sound, reasoned judgment of the trial court, subject only to reversal for an abuse of discretion.

education of the parties' children and that, accordingly, the trial court erred in counting the account as marital property and in not preserving the asset for the benefit of the children. Plaintiff argues that, regardless of the parties' intentions for the account funds, the trial court was charged with the duty to ascertain to whom the funds belonged and to proceed to divide all marital property equitably. Plaintiff is correct.

R.C. 3105.171 provides:

"(A) As used in this section:

" * * *

"(3)(a) 'Marital property' means, subject to division (A)(3)(b) of this section, all of the following:

"(i) All real and personal property that currently is owned by either or both of the spouses * * * that was acquired by either or both of the spouses during the marriage;

"(ii) All interest that either or both of the spouses currently has in any real or personal property * * * that was acquired by either or both of the spouses during the marriage;

"(B) In divorce proceedings, the court shall * * * determine what constitutes marital property * * *. [U]pon making such a determination, the court shall divide the marital * * * property equitably between the spouses, in accordance with this section. For purposes of this section, the court has jurisdiction over all property in which one or both spouses have an interest.

"(C) * * *

" * * *

"(2) Each spouse shall be considered to have contributed equally to the production and acquisition of marital property."

A trial court's classification of property will be reversed if it is against the manifest weight of the evidence. *Perrine v. Perrine* (Aug. 28, 1996), Summit App. No. 17671, unreported, 1996 WL 490253, citing *James v. James* (1995), 101 Ohio App.3d 668, 684, 656 N.E.2d 399, 409. In addressing a manifest-weight claim on review, an appellate court "will only reverse a verdict when it '["]is so manifestly contrary to the natural and reasonable inferences to be drawn from the evidence as to produce a result in complete violation of substantial justice.["]' " *Lorain v. Greenwood, Inc.* (June 30, 1998), Lorain App. No. 97CA006812, unreported, 1998 WL 405034, quoting *Jacobs v. Benedict* (1973), 39 Ohio App.2d 141, 144, 68 O.O.2d 343, 345, 316 N.E.2d 898, 901, and 3 Ohio Jurisprudence 2d (1953) 817, Appellate Review, Section 819.

■ This court's holding in *Perrine* is relevant to the instant issue. In *Perrine*, this court held that a bank account was a marital asset subject to division despite the husband's testimony that the account funds actually belonged to his mother. Several circumstances influenced that decision: "the account was solely in the names of [the divorced couple], and under their control, for over two years. [The couple] also paid income taxes on the interest income." *Id.* In the instant case, the stock account was only in plaintiff's and defendant's names and had not borne the children's names since its very inception. Plaintiff and defendant both held a right of survivorship in the account and they paid income tax on the account appreciation. Further, defendant testified that the account funds were intentionally not placed in a trust for the children, and plaintiff testified that half the money in the account belonged to her. Therefore, based on this evidence, the court affirms the trial court's order designating the account as marital property subject to division.[2] Further, nothing in this opinion prevents the parties from still using the distributed account funds to finance the education of their children.

■ In regard to defendant's eighth assignment of error, this court finds an abuse of discretion in the trial court's June 1997 order altering the distribution of the increased account contents. As noted, in its February 5, 1997 order the trial court ordered that the Robert Thomas account be divided between the parties, with each party to receive $14,677, which was half of the value of the account given the court's valuation of the account at that time. However, subsequent to the April 1996 finding of fact on which the value of the account was based, the account reportedly experienced a substantial increase in value. On June 13, 1997, plaintiff moved the court to hold a hearing concerning the disbursement of this increase. Thereafter, on June 19, 1997, defendant filed his notice of appeal. The next day the trial court journalized an order [3] containing the following provision:

---

2. The instant case is distinguishable from this court's previous holding in *Wilson v. Wilson* (July 24, 1996), Wayne App. No. 95CA0089, unreported, 1996 WL 411631, where accounts bearing both the name of the mother and a child were regarded as custodial accounts. There, in addition to the child's name appearing on the account, the custodial accounts were funded by the child's Social Security benefits, testimony attributed ownership of the funds solely to the child, the child reported income from the accounts for tax purposes, and the mother stated that her name was only on the account as a precaution against the child's squandering the funds.

3. On July 22, 1997, defendant filed a motion to vacate the June 1997 order, arguing that since a hearing had been scheduled on the issue of disbursement of the account funds, the court's order was in effect an *ex parte* grant of plaintiff's motion for release of funds that violated defendant's right to due process. The record does not indicate what became of this motion, and defendant has not raised the motion on appeal. Consequently, this court has not considered the motion on appeal.

"In its February 5, 1997 order, the Court did not provide language to account for the increase or decrease in balances in accounts.

"The Robert Thomas account # 43818464 is to be divided equally between the parties. If the account has increased or decreased, each party shall receive 50% of the current balance upon the date of division."

Defendant argues that the order was an impermissible modification of the prior property division. This court agrees.

R.C. 3105.171(I) provides that "[a] division or disbursement of property or a distributive award made under this section is not subject to future modification by the court." This is true even where a court explicitly attempts to retain modification power. See, e.g., *Farley v. Farley* (Apr. 6, 1994), Lorain App. No. 93CA005663, unreported, 1994 WL 117119.

In its February 1997 order, the trial court listed the value of the stock account as follows:

"Robert Thomas Account # 43818464 [$]29,354.00
 as of 02/27/96"

The court then valued defendant's pension as follows:

"Lakeland Associates # 1550300028 [$]182,140.02
 as of 2/27/96"

Finally, when dividing the marital property, the court did so in the following manner:

"The parties shall receive as follows:

| | | Susan | Kim |
|---|---|---|---|
| "A. | Robert Thomas Account | $14,677 | $14,677 |
| "B. | Lakeland Associates | To be divided equally by QDRO" | |

It is well settled that "a trial court has the right to construe and clarify its own judgment, and such construction does not amount to a modification of the judgment." *Thomarios v. Thomarios* (Jan. 10, 1990), Summit App. No. 14232, unreported, 1990 WL 1777. See, also, *Peterson v. Peterson* (Apr. 6, 1998), Butler App. No. CA97–09–169, unreported, 1998 WL 166475 ("While a court may not modify a previous property division, it is permitted to clarify the original property division so as to effectuate its judgment"). However, the June 1997 action by the trial court was not a clarification of its judgment. While the February 1997 order specifically noted that the account valuation was based on a February 1996 determination, the trial court nonetheless divided the account in specific dollar amounts as opposed to percentages. The February 1997 order demonstrates that the trial court knew how to provide for equal division; the court could have done for the stock account what it did for the pension if it had so intended.

 Further, the court's June 1997 order cannot be viewed as a *nunc pro tunc* entry correcting a clerical error in an effort to clarify action actually taken. This court has previously explained:

" 'The purpose of a *nunc pro tunc* order is to have the judgment of the court reflect its true action. The power to enter a judgment *nunc pro tunc* is restricted to placing upon the record evidence of judicial action which has actually been taken. It does not extend beyond the power to make the journal entry speak the truth, and can be exercised only to supply omissions in the exercise of functions which are merely clerical. *It is not made to show what the court might or should have decided, or intended to decide, but what it actually did decide.*' " (Emphasis added; citations omitted in original.) *State v. Conley* (Nov. 19, 1997), Lorain App. No. 96CA006675, unreported, 1997 WL 781799, quoting *McKay v. McKay* (1985), 24 Ohio App.3d 74, 75, 24 OBR 129, 130, 493 N.E.2d 317, 318.

The court's subsequent June 1997 order was not a clarification of the percentage of distribution, but rather was an alteration of the actual action taken by the trial court. The order substantively altered that court's judgment regarding the division of marital property. Although well intentioned, the court exceeded its authority in modifying its previous order. Accordingly, defendant's eighth assignment of error is well taken. Upon remand, the trial court should divide the increase in funds equitably.

### *Defendant's Sixth Assignment of Error*

"The trial court erred in requiring the parties to file a joint 1995 tax return."

 In its February 1997 order, the trial court ordered the parties to file a joint 1995 tax return.[4] Defendant contends that the court abused its discretion by improperly ordering the parties to act in contravention of federal tax law, arguing that "pursuant to [Section § 7703(b), Title 26, U.S.Code] [defendant] is not considered to be married for Internal Revenue Service purposes, and therefore he cannot file a joint tax return for 1995." This court disagrees.

Section 7703(b), Title 26, U.S.Code (determination of marital status) provides:

"Certain married individuals living apart.—For purposes of those provisions of this title which refer to this subsection, if–

"(1) an individual who is married (within the meaning of subsection (a)) *and who files a separate return* maintains as his home a household which constitutes for more than one-half of the taxable year the principal place of abode of a child (within the meaning of section 151(c)(3)) with respect to whom such individual is

---

4. The parties had filed separately.

entitled to a deduction for the taxable year under section 151 (or would be so entitled but for paragraph (2) or (4) of section 152(e)),

"(2) such individual furnishes over one-half of the cost of maintaining such household during the taxable year, and

"(3) during the last six months of the taxable year, such individual's spouse is not a member of such household,

"such individual shall not be considered as married." (Emphasis added.)

This court reads the plain language of Section 7703(b), Title 26, U.S.Code to require that five conditions be satisfied before a married individual is regarded as not married for Internal Revenue Service purposes: (1) the taxpayer must be married, (2) the taxpayer must file a separate return, (3) the taxpayer must have maintained as his home a household that is the principal place or abode of a child dependent, (4) the taxpayer must have paid more than one-half the cost of maintaining the household, and (5) the taxpayer must not have had the other spouse living with him for the last six months of the tax year. Most pertinent to the instant discussion is the second condition, which requires that a taxpayer seeking this status file a separate tax return rather than a joint return. As a general rule, a married couple may elect to file either separate or joint tax returns, assuming they qualify for both classifications. See Section 6013, Title 26, U.S.Code. Therefore, the "abandoned spouse rule" [5] is applicable only under circumstances brought about in part by the election of the taxpayer and is not a mandatory classification precluding joint filing as a married individual. Contrary to defendant's interpretation, then, Section 7703(b), Title 26, U.S.Code does not prevent defendant from filing a joint tax return, but rather is simply a potential option available to him in the absence of a court order dictating otherwise.

The trial court not only has the authority to issue just such an order, but also has a duty to consider such action when equitable considerations so demand. As this court has previously explained:

"In a divorce, a trial court is required to effect a property division under R.C. 3105.171(B). * * *

"In dividing marital property, the trial court is *required* to consider the tax consequences of the division. R.C. 3105.171(F)(6)." (Emphasis added.) *Ferrick v. Ferrick* (Apr. 1, 1998), Summit App. No. 18486, unreported, 1998 WL 150381.

In *Ferrick*, this court recognized the ability of the trial court to order that a joint return be filed, holding that "in a divorce action, the trial court has

---

**5.** Term derived from 33 American Jurisprudence 2d (1994) 622, Federal Taxation, Section 1027.

jurisdiction and authority to order a spouse to amend a federal tax return as part of a property division." *Id.* See, also, *Neeley v. Neeley* (Nov. 14, 1984), Hamilton App. No. C–830928, unreported, 1984 WL 7058 (holding that a court has the authority to order such amendment pursuant to its "power to determine the equitable division of property"); but, see, *Madry v. Madry* (Sept. 23, 1982), Franklin App. No. 82AP–351, unreported, 1982 WL 4435. Further, this is "not a case where the party who refuses to join in a joint return is constrained by a legitimate concern that the adverse party wants to file a fraudulent or inaccurate return, and the fear of personal liability for the civil or criminal consequences. [T]he [parties'] data appear to be the same, and the only issue is joint [versus] individual filing." *Ferrick, supra.*

Defendant incorrectly contends that the Section 7703(b), Title 26, U.S.Code precludes joint filing in this instance, and he has not demonstrated that the trial court abused its discretion in requiring the parties to file a joint tax return. Accordingly, defendant's sixth assignment of error is rejected.

### *Defendant's Seventh Assignment of Error*

"The trial court erred in finding the existence of a debt owed to Mr. Maynard Chaplin."

Defendant argues that the trial court incorrectly found that the parties owed a debt to plaintiff's father in the amount of $12,000. Defendant has not specifically termed his challenge to the trial court's finding as a sufficiency-of-the-evidence or a manifest-weight argument; rather, defendant describes his assignment of error as being concerned with "[t]he paucity of evidence regarding loans provided by" plaintiff's father, claiming that "[t]he trial court offered no basis for its finding that the parties owed" the loan, and that "[t]he record is devoid of any documentary evidence which could support" the finding of such a loan.

Initially construing defendant's assignment of error as a manifest-weight-of-the-evidence argument, this court notes:

"The credibility of witnesses and resolutions of conflicts in evidence are matters for the trier of facts. On appeal, the trial court's resolution of fact will not be disturbed unless clearly contrary to the manifest weight of the evidence." (Citations omitted.) *Crull v. Maple Park Body Shop* (1987), 36 Ohio App.3d 153, 154, 521 N.E.2d 1099, 1101.

This court's determination is also guided by the dictates of the Supreme Court of Ohio:

"While * * * in some instances an appellate court is duty-bound to exercise the limited prerogative of reversing a judgment as being against the manifest weight of the evidence in a proper case, it is also important that in doing so a court of

appeals be guided by a presumption that the findings of the trier-of-fact were indeed correct.

"The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." (Footnote omitted.) *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 79–80, 10 OBR 408, 410, 461 N.E.2d 1273, 1276.

■ In the instant case, plaintiff testified that prior to 1990, Chaplin had loaned the parties about $15,000 and that since 1995, Chaplin had loaned plaintiff between $10,000 and $12,000. Chaplin testified that, while there was no documentation of the accumulated debt, he expected repayment of portions of the debt. This court holds that the trial court's factfinding concerning the existence of a debt was not clearly contrary to the manifest weight of the evidence.

Further, contrary to defendant's allegation, the trial court indeed offered a basis for finding the existence of a debt, summarizing the testimony on this issue in its February 1997 order:

"The Court heard testimony from the parties and [plaintiff's] father, Maynard Chaplin, and [defendant's] mother, Brenlee Bowen, relative to financial assistance provided to the parties during the marriage. * * *

"[Plaintiff's] parents provided on-going financial assistance and some vacation monies[;] however, no documentation was provided.

"The parties acknowledge that they received financial assistance from both families; however, they disagree as to the amount and the extent of the repayment.

"The Court finds that there are obligations to Maynard Chaplin of $12,000.00 and to Brenlee Bowen of $37,000.00."

■ Having found that the trial court's factfinding was not against the manifest weight of the evidence, this court need not now specifically discuss the sufficiency of the evidence. This court has previously noted that a determination that a finding is not contrary to the manifest weight of the evidence will also be dispositive of the issue of sufficiency. See *State v. Roberts* (Sept. 17, 1997), Lorain App. No. 96CA006462, unreported, 1997 WL 600669.

This court will not substitute its judgment for that of the trial court. Defendant's seventh assignment of error is overruled.

*Defendant's Ninth Assignment of Error*

"The trial court erred in determining the commencement date of the child support obligation of Mrs. Bowen and the spousal support obligation of Mr. Bowen."

On August 16, 1996, the trial court issued an order that provided, *inter alia,* that plaintiff be designated as the residential parent of the youngest child and that defendant be designated as the residential parent for the remaining children.[6] No provisions were made for the payment of child support by plaintiff at that time. The court then established in its February 5, 1997 order a set amount of spousal support that would become effective March 1, 1997, and left for later resolution the issue of child support. Thereafter, the trial court established in a May 21, 1997 order that commencing June 1, 1997, plaintiff would pay child support to defendant of $48.16 per child, per month, in addition to two-percent poundage. Further, the trial court modified the spousal support award, with a $400 per month reduction taking effect on the date of the order.

Defendant avers that the trial court abused its discretion in regard to both the commencement date of the child support and the modification date of the spousal support. Specifically, defendant argues that the court should have awarded child support retroactive to August 16, 1996, and that the court should have ordered the modification of spousal support retroactive to the March 17, 1997 filing of his motion for modification. Plaintiff counters that even if the changed custody arrangement set forth in the May 1997 order could be construed as a substantial change in circumstances warranting modification of spousal support, defendant did not become residential parent of the youngest child until June of that year; therefore, plaintiff contends, the June 1, 1997 date for modification of spousal support and commencement of child support was proper.

Although both defendant and plaintiff fail to cite any case law or statutory provision in support of their respective positions, this court notes the rule recognized in *Naragon v. Naragon* (Oct. 24, 1990), Summit App. No. 14583, 1990 WL 163869, unreported:

"A court may, within its sound discretion, modify a child support award by ordering either an increase or decrease of a party's obligation. In both situations, the parties are entitled to have the order of the trial court relate back to the date upon which the motion for a modification of child support was filed." See, also, *State ex rel. Draiss v. Draiss* (1990), 70 Ohio App.3d 418, 421, 591 N.E.2d 354, 356 ("absent some special circumstance, an order of a trial court

---

**6.** The trial court's May 1997 order modified this arrangement.

modifying child support should be retroactive to the date such modification was first requested").

It is axiomatic that the same rule could apply to spousal support modifications, as the same underlying considerations apply; given the substantial amount of time that it frequently takes to dispose of motions to modify support obligations, whether they are for spousal or child support, any rule that would preclude retroactive modification would risk producing an inequitable result. See *Naragon*. The Seventh District, relying upon this court's decision in *Naragon*, has applied this logic to spousal support modifications, holding that an order modifying a decree as to spousal support may be made retroactive to the date of the filing of the motion for modification. *Merkle v. Merkle* (1996), 115 Ohio App.3d 748, 754, 686 N.E.2d 316, 320.

However, the ability to order retroactive modification and a mandate to make such an order are not the same thing. Defendant has failed to cite any authority that places such a duty upon the trial court. While retroactive modification of spousal support is the better practice in most cases, the trial court's decision not to do so is discretionary, and this court is not inclined to designate this act as unreasonable, unconscionable, or arbitrary.

Nor does this court find an abuse of discretion in the trial court's selection of the June 1, 1997 child support commencement date. Unlike *Naragon* and *Draiss*, the issue in the instant case involves a movant's motion not to modify but to establish child support. At the time of the August 1996 determination of residential parent status, the trial court had not required plaintiff to pay defendant child support and no request by defendant for such an award appears to have been made until the March 17, 1997 motion to establish child support. This court holds that any right to child support dating back to the August 1996 custody arrangements is waived and that the trial court did not abuse its discretion in ordering the commencement of child support to begin at the same time that all three children came to reside with defendant.[7] Therefore, defendant's claim to retroactive child support is also rejected.

Defendant's ninth assignment of error is not well taken.

### Defendant's Eleventh Assignment of Error

"The trial court abused its discretion by modifying the shared parenting plan of Mrs. Bowen filed February 16, 1996."

---

7. This court also notes that the Supreme Court of Ohio has stated, "A custodial parent is not entitled to reimbursement for child support from the non-custodial parent where no support order is made or requested at the time custody is awarded." (Citations omitted.) *Meyer v. Meyer* (1985), 17 Ohio St.3d 222, 17 OBR 455, 478 N.E.2d 806, syllabus.

*Plaintiff's Third Assignment of Error*

"The trial court erred as a matter of law by adopting its own modified version of Susan's shared parenting plan."

Both parties contend that the trial court impermissibly adopted the shared parenting plan. This court agrees.

The procedure for adoption of a shared parenting plan is set forth in R.C. 3109.04(D)(1), with specific circumstances covered in that provision's subsections. This court has explained the procedure set forth in R.C. 3109.04(D)(1)(a)(ii), which pertains to situations where, as here, both parties submitted plans [8]:

"A court may determine that one of the submitted plans is in the best interest of the children and adopt that plan verbatim. Barring adoption of one of the submitted plans, however, a court may only make suggestions for modification of the plans to the parties. If the parties do not make appropriate changes or if the court is not satisfied with the changes that are resubmitted following the suggestions for modification, then the court may deny the request for shared parenting of the children. The statute does not give the court authority to create its own shared-parenting plan. A satisfactory plan must be filed with the court for adoption; otherwise, the court will not adopt any plan." (Citations omitted.) *McClain v. McClain* (1993), 87 Ohio App.3d 856, 857, 623 N.E.2d 242, 243. See, also, *Helms v. Helms* (Sept. 10, 1997), Summit App. No. 18142, unreported, 1997 WL 576385 ("[n]othing in the statute permits the court to adopt its own shared parenting plan").

In the instant matter, the adopted shared parenting plan was not submitted by either party. While derived from a plan submitted by plaintiff, the plan adopted by the trial court was nonetheless a product of that court's own creation. Both parties argue that the court therefore violated the express procedures set forth in R.C. 3109.04(D)(1)(a)(ii). Both parties are correct. Defendant's eleventh assignment of error and plaintiff's third assignment of error are both well taken.

*Plaintiff's Second Assignment of Error*

"The trial court abused its discretion by failing to award Susan Bowen reasonable attorney's fees."

---

8. Defendant withdrew his plan from consideration.

Plaintiff argues that the trial court erred in declining to award her attorney fees in its May 21, 1997 order.[9] This court disagrees.

In examining the issue of attorney fees in this context, the abuse-of-discretion standard applies. *Dus v. Dus* (Oct. 21, 1998), Summit App. No. 18770, unreported, 1998 WL 733724, citing *Rand v. Rand* (1985), 18 Ohio St.3d 356, 359, 18 OBR 415, 417, 481 N.E.2d 609, 612. Plaintiff contends that the trial court abused its discretion by denying her an award of attorney fees, asserting in support that the record indicates (1) that defendant's various attorneys litigated the divorce vigorously and aggressively, (2) that testimony reveals plaintiff borrowed several thousand dollars for her legal bills, and (3) that an award of fees would have been appropriate, given the parties' disparate incomes. These reasons are rejected.

Plaintiff's first proposition fails to lend support to an award of attorney fees. It is indeed true that while professionalism dictates that all counsel represent clients zealously, such vigorous representation must not exceed the bounds of the law or be motivated by ignoble purpose. See Canon 7 of the Code of Professional Responsibility. The Eighth District has explained:

"The court must look at various tactics used during the entire case to determine whether those tactics are used to delay the proceedings and increase attorney fees regardless of who pays the fees. The court must also examine the conduct of the parties to determine at what point the quest for justice ceases, and the use of the legal system as a tool for punishment, harassment, coercion, and intimidation of the other party begins.

" * * *

"We must also emphasize that the payment of attorney fees *is primarily the function of the party who retains the attorney.* It is not an equal obligation of both parties. While the law allows one party to a divorce under certain conditions to be required to pay for all or some of the other party's legal fees, R.C. 3105.18, the trial court must make the determination equitably and fairly to serve the ends of justice." (Emphasis *sic.*) *Farley v. Farley* (1994), 97 Ohio App.3d 351, 357–358, 646 N.E.2d 875, 879 (rejecting post-trial award of fees to party).

While it would not be unfair to characterize the proceedings in the instant case as often contentious, it would be unfair to say that the vigorous and aggressive actions of defendant's attorneys resulted in an abdication of the pursuit of justice

---

9. The trial court had previously denied an award of attorney fees in its February 1997 order. The May 21, 1997 order finalized all matters before the court. Both denials of attorney fees contained nearly identical language.

warranting an award of fees when the trial court acted within its discretion in refusing such an award.

Examination of the relevant aspects of the record in relation to plaintiff's second and third propositions of law is similarly unconvincing. As noted, an award of attorney fees in a divorce proceeding is governed by R.C. 3105.18(H), which provides:

"In divorce or legal separation proceedings, the court may award reasonable attorney's fees to either party at any stage of the proceedings, * * * if it determines that the other party has the ability to pay the attorney's fees that the court awards. When the court determines whether to award reasonable attorney's fees to any party pursuant to this division, *it shall determine whether either party will be prevented from fully litigating that party's rights and adequately protecting that party's interests if it does not award reasonable attorney's fees.*" (Emphasis added.)

Although defendant earns substantially more than plaintiff, even taking into account support paid to plaintiff, this disparity alone is insufficient to support a prevailing contention that without an award of fees plaintiff would be prevented from fully litigating her rights and protecting her interests. Given that *both* parties had to borrow money to finance the cost of litigation and the absence of evidence demonstrating both an inability to pursue justice adequately without an award and the reasonableness of plaintiff's acknowledged litigation costs,[10] this court finds no clear showing of abuse in the trial court's order requiring the parties to pay their own attorney fees. See *Towne v. Towne* (Nov. 27, 1996), Summit App. No. 17772, unreported, 1996 WL 688155. Plaintiff's second assignment of error is overruled.

### Defendant's Tenth Assignment of Error

"The trial court erred in determining the child support obligation of Mrs. Bowen."

The May 1997 order of the trial court established child support. This order provided that, based upon the parties' respective 1996 W–2 forms, defendant's income for purposes of child support calculation was $237,970, while plaintiff's income was $15,806. The order further provided that, commencing June 1, 1997, plaintiff was to pay defendant $48.16 per child, per month, in addition to two percent poundage. The court expressly retained continuing jurisdiction until the

---

10. Unsupported testimony indicates that plaintiff borrowed several thousand dollars for legal costs. The record fails to disclose that any evidence of other such costs came before the trial court.

children turned eighteen and were no longer attending high school on a full-time basis.

Defendant appears to argue that the trial court failed to regard plaintiff as voluntarily underemployed and, as a result, erred in failing to impute potential income to plaintiff in making its child support determination. Given the disposition of defendant's eleventh assignment of error and plaintiff's third assignment of error, this court need not address the propriety of the trial court's declining to impute potential income to plaintiff. Upon remand, the trial court, after determining what shared parenting plan, if any, will be implemented, shall then necessarily review the issue of child support.[11]

### Defendant's Twelfth Assignment of Error

"The trial court erred in adopting the shared parenting plan of Mrs. Bowen."

Defendant argues not only that the trial court erroneously adopted the shared parenting plan,[12] but also that the court abused its discretion in ordering shared parenting at all. As this court's resolution of defendant's eleventh assignment of error and plaintiff's third assignment of error renders this last assignment of error moot, this court need not address the propriety of ordering shared parenting in this proceeding and leaves that determination to the sound judgment of the trial court upon remand.

### III Conclusion

For the foregoing reasons, this court hereby affirms in part and reverses in part the judgment of the Medina County Court of Common Pleas. The cause is remanded for further proceedings.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

SLABY, P.J., and DICKINSON, J., concur.

---

**11.** R.C. 3113.215 provides that a specific worksheet be used to calculate support in instances where a shared parenting plan is used as opposed to other arrangements.

**12.** This court further notes that, contrary to the wording of defendant's twelfth assignment of error, it was not plaintiff's shared parenting plan that was adopted by the trial court; rather, as discussed, that court adopted a court-modified version of plaintiff's proposed plan.