DECISION AND JUDGMENT ENTRY
This case is before the court on appeal from a judgment of the Lucas County Court of Common Pleas, Domestic Relations Division, which granted a divorce to the parties, divided the marital property and awarded appellant/cross-appellee, Karen A. Nehls ("appellant"), spousal support and attorney's fees. The court further ordered appellee/cross-appellant, Barry L. Nehls ("appellee"), to pay appellant $8,800 as reimbursement for mortgage payments on the marital residence that appellant allegedly made during the pendency of the divorce proceedings. For the reasons that follow, we affirm, in part, and reverse, in part.
At the hearing on this matter, the only disputed issues before the court were those of spousal support and the responsibility for appellant's attorney's fees. The facts relevant to the disposition of these issues are as follows.
Appellant and appellee were married in March 1970. Appellant was a waitress at the beginning of the marriage and later worked in the dietary department of a hospital until her husband completed his college education. Appellant subsequently became a licensed practical nurse and worked, mainly part-time, in this field until 1985. In 1990, appellant became involved in her husband's businesses on a full-time basis as a bookkeeper. Appellant worked in this position until October 1999 when the parties separated. During this period the parties had three daughters; all three were emancipated at the time of the divorce proceedings.
Appellant was 48 years old at the time of the trial of this case and has no pension. Nor does she have an interest in any property other than marital property[1]. Nevertheless, appellee, who also has no pension plan, testified that the parties provided for their retirement through the purchase of life insurance and mutual fund retirement accounts. He indicated that the premiums for the insurance policies totaled $16,000 per year. Some of the life insurance policies/mutual fund accounts were awarded to appellant as part of the division of marital property.
Appellant maintained that since the separation, all of her living expenses, including medical expenses, were paid from a bank account initially containing $85,000. The balance of the funds in this account at the time of trial was $26,000; appellant was awarded these funds as part of a division of the marital property.
While appellant still holds a valid license to work as an LPN she testified that she would be unable to return to nursing without further re-training and education. She stated, however, that she hopes to return to nursing when she is "well." Appellant did not work throughout the divorce proceedings.
The record reveals that appellant suffers from chronic depression and an anxiety disorder. The therapist who treated appellant for these problems stated that, due to the panic attacks experienced by appellant in an unfamiliar employment setting, appellant would need further counseling before she could secure the same.
The record also discloses that appellant abused alcohol throughout the marriage. Additionally, appellant has fibromyalgia (a chronic condition that causes bone, tendon, and joint pain), asthma and chronic bronchitis, a damaged liver (caused by a "severe illness"), pylonephritis (kidney infections) and alopecia aresta (serious hair loss over her entire body and head). Appellant stated that due to her damaged liver, she has difficulty digesting foods and, therefore, experienced a drastic weight loss in the two to three years prior to the trial held on this cause.
All of the foregoing conditions require continuing medical treatment and/or medication. It is undisputed that for the year preceding trial, appellant spent over $6,000 for out-of- pocket medical expenses, approximately $1,000 for vision care, and almost $5,000 for prescriptions. Her monthly health insurance premium after the divorce will be $327.40.
Appellant also paid $18,000 in uninsured dental expenses. The trial court found that the dental expenses resulted from domestic violence committed by appellee on the day the parties separated. It is undisputed that appellee was convicted on a charge of domestic violence for this incident.
Appellee was 51 years old as of the date of trial. He has a Bachelor's degree in Science and Chemistry. In 1989, and after several years of working in the research and development department of a corporation and as a minister, appellee established his own business, Advance Filtration Solution. The following year he founded a related corporation, Swim Pure Corporation. It is undisputed that in recent years, income from appellee's corporations was over $100,000 per year. Appellee also has a personal income of around $16,000 per year from two patents. The trial court found that appellant's average income for the period of 1997 through 1999 was slightly over $82,000. Appellee described his health as "excellent."
Appellee provides some support for the parties' youngest daughter, who was injured in a motor vehicle accident. However, the daughter, who was 20 years old at the time of the divorce proceeding, also receives social security disability benefits. In addition, appellee testified that, pursuant to a settlement agreement reached in his daughter's personal injury suit, she will, upon attaining the age of 22, receive a monthly stipend of over $2,000 for 40 years or life. In addition, she will receive three lump sum payments of $75,000 each.
Based on this evidence and the stipulations of the parties, the domestic relations court found, in its decision, that there was a substantial disparity between the incomes and earning ability of the parties. It further determined that appellant has severe medical, emotional and psychological conditions that impede her ability to earn a living and to pay for her living expenses. By judgment entry, the court therefore awarded appellant spousal support in the amount of $2,500 per month for two years, then reduced the support to $1,666 per month for the next two years, and then to $1,800 per month until further order of the court, subject to appellant's "death, re-marriage or cohabitation with another as if married * * *, whichever occurs first." The lower court held that the basis for the "step-down" in the amount of spousal support "is intended to give Plaintiff [appellant] an incentive to acquire job skills to enhance her earning potential" and "to allow her to obtain necessary health treatment." Additionally, the trial court retained jurisdiction to review the spousal support award upon a change in circumstances or in the event that appellant qualifies for disability benefits.
We shall first address the assignment of error on cross-appeal, which reads:
 "The trial court abused its discretion when it found that appellee failed to make four mortgage payments required under a temporary support order and when it ordered appellee to reimburse defendant for said payments."
In her reply brief, appellant concedes this issue. Our review of the record reveals neither a request on the part of appellant for an additional $8,800 for four mortgage payments nor evidence supporting such a finding. The only arrearage discussed was a stipulated $10,500 in spousal support. The court ordered appellee to pay this arrearage from the proceeds from the sale of the marital residence. Based upon our review, as well as appellant's concession, we are compelled to find that the domestic relations court erred in awarding, sua sponte, $8,800 to appellant. Accordingly, appellee's cross-assignment of error is found well taken.
In her first assignment of error, appellant asserts:
 "The trial court abused its discretion and erred to the prejudice of appellant when it awarded spousal support with a `step-down' structure."
A trial court has broad discretion in making an award of spousal support. Bolinger v. Bolinger (1990), 49 Ohio St.3d 120, 122, An award of spousal support will be upheld absent an abuse of that discretion.Kaechele v. Kaechele (1988), 35 Ohio St.3d 93, 94. An abuse of discretion "connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable."Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
The court's discretion is limited, however, by R.C. 3105.18(C)(1), which requires the court to consider fourteen listed factors[2] "[i]n determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, * * *." Layne v. Layne (1992), 83 Ohio App.3d 559, 562.
In the present case, neither appellant nor appellee take issue with the fact that the court ordered the payment of spousal support for an indefinite period of time. Instead, appellant challenges the "step-down" structure ordered by the trial court. A step-down spousal award is one that decreases at times set by the trial court. See Smith v. Smith
(Jan. 12, 2001), 6th Dist. No. H-99-029; Roberts v. Roberts (July 24, 1998), 6th Dist. No. F-97-027. See, also, Capper v. Capper (Dec. 14, 1995), 4th Dist. No. 95-CA-8. Notably, all three of these cases involve spousal support awards for a definite period of time. The term was five years in both Smith and Roberts and was seven years in Capper.
In Smith and Roberts, this court held that a step-down spousal support award is valid so long as a domestic relations court sets forth a basis for structuring the support order in this way. In the case before us, the trial court set forth two bases for the step-down. The court stated that the step-down would (1) provide appellant with an incentive and the opportunity to acquire job skills to enhance her earning potential, and
 (2) allow her to obtain necessary health treatment. Despite the fact that the domestic relations court set forth this rationale, we find that, under the circumstances of this cause, a step-down spousal support award is unreasonable because it is contrary to the court's finding that appellant is entitled to spousal support for an indefinite period.
In Kunkle v. Kunkle (1990), 51 Ohio St.3d 64, paragraph one of the syllabus, the Ohio Supreme Court held that where a spouse has the resources, ability and potential to be self-supporting, a spousal support award "should provide for the termination of the award, within a reasonable time and upon a date certain, in order to place a definitive limit upon the parties' rights and responsibilities." This rule, however, is not absolute. When the marriage is one of long duration, the parties are of an advanced age, or the spouse is a homemaker with little opportunity to develop meaningful employment outside the home, an award of spousal support for an indefinite time may be appropriate. Id. The key issue is, again, the lack of potential for self-support.
Here, the trial court recognized, among other things, that this was a marriage of long duration, that appellant could not return to nursing without expending a large sum for re-training, that appellant has numerous, long term, debilitating psychological and physical conditions that preclude her from obtaining work or the necessary training, that appellant lacks the wherewithal to obtain the psychiatric, medical and educational assistance she requires for potential self-support, and that there is a great disparity in the parties' incomes. In short, the court determined that appellant lacks the potential to be self-supporting. The court's reasons for the step-down are contrary to this determination because they assume that appellant has the potential for self-support.
Moreover, the step-down is unnecessary in a case where a domestic relations court reserves jurisdiction to modify an indefinite spousal support award. If there is a change in the circumstances of either party, a request for modification of the award can be made pursuant to R.C. 3105.18(E). We therefore conclude that the trial court did abuse its discretion in ordering a step-down in appellant's spousal support award. Accordingly, appellant's first assignment of error is found well-taken.
In her second assignment of error, appellant claims:
 "The trial court abused its discretion and erred to the prejudice of appellant when it awarded only $5,000 in partial attorney fees."
R.C. 3105.18(H) provides that a trial court may award reasonable attorney's fees to either party during any stage of a divorce proceeding. In order to make such an award, the court must determine whether the payor has the ability to pay the attorney's fees it awards and whether either party would be prevented from fully litigating his or her rights and adequately protecting his or her interests if attorney's fees were not awarded. Id. The trial court's decision regarding attorney's fees must be equitable, fair, and serve the ends of justice.Bowen v. Bowen (1999), 132 Ohio App.3d 616, 642. An appellate court will only disturb a trial court's decision as to attorney's fees if the trial court abused its discretion. Id.
In the present case, appellant presented evidence showing that she owed $9,285 in attorney's fees. The parties stipulated that appellant's attorney's fees were necessary and reasonable. Thus, the only questions before the trial court were whether appellee had the ability to pay the attorney's fees and whether either party would be prevented from fully litigating his or her case if attorney's fees were not awarded. The court considered these questions and decided them in favor of appellant. It also found that these fees were necessary and reasonable to adequately protect appellant's interest. In so finding, the trial court was therefore required to award the stipulated amount, $9,285, in attorney's fees to appellant. We find that the trial court's failure to do so is an abuse of discretion. Therefore, appellant's second assignment of error is found well taken.
On consideration whereof, this court finds that substantial justice was not done the parties complaining, and the judgment of the Lucas County Court of Common Pleas, Domestic Relations Division, is affirmed, in part, and reversed, in part. Paragraph 3 of the trial court's judgment which awards appellant $8,800 as and for mortgage payments is reversed and vacated. As to the award of spousal support and attorney's fees, this court hereby enters the judgment that should have been entered by the trial court. See App.R. 12(B).
The pertinent portion of Paragraph 4 of the trial court's judgment is revised to read as follows:
 "a) Defendant shall pay to Plaintiff the sum of Two Thousand Five Hundred Dollars ($2,500) per month."
The step-down provision of Paragraph 4 is vacated. The rest of Paragraph 4, specifically, the method of payment of the spousal support and parts b) and c) remain the same. Paragraph 15 is changed only as to the amount of the attorney's fees awarded to appellant. That is, the $5,000 figure in lines three and ten of Paragraph 15 shall be changed to the proper figure, $9,285. This cause is remanded to the trial court for the sole purpose of the entry of these modifications. Appellant and appellee are ordered to pay, in equal shares, the costs of this appeal.
JUDGMENT AFFIRMED, IN PART, AND REVERSED, IN PART.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Melvin L. Resnick, J., James R. Sherck, J., and Richard W. Knepper,J., CONCUR.
[1] This includes a half interest in a motel located in Oklahoma, which appellant holds for the benefit of her mother.
[2] The factors are:
"* * *
 "(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 [3105.17.1] of the Revised Code;
"(b) The relative earning abilities of the parties;
 "(c) The ages and the physical, mental, and emotional conditions of the parties;
"(d) The retirement benefits of the parties;
"(e) The duration of the marriage;
 "(f) The extent to which it would be inappropriate for a party, because he will be custodian of a minor child of the marriage, to seek employment outside the home;
 "(g) The standard of living of the parties established during the marriage;
"(h) The relative extent of education of the parties;
 "(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 "(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
 "(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
 "(l) The tax consequences, for each party, of an award of spousal support;
 "(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 "(n) Any other factor that the court expressly finds to be relevant and equitable."