DECISION AND JOURNAL ENTRY
Appellant, Mark Thompson, has appealed from a judgment of the Summit County Common Pleas Court, Juvenile Division, that granted permanent custody of two of his children to Summit County Children Services Board ("CSB"). This Court affirms.
 I.
Appellant and Lisa Beck are the parents of two children, Justin and Marissa.[1] While the family was living in Portage County, both children were placed under protective supervision of the department of human services because Appellant's three older children had been removed from his home following allegations of physical abuse. The matter was transferred to CSB after the family moved to Akron.[2] Justin and Marissa were later removed from the home due to Beck's substance abuse. They were never placed in the custody of Appellant because he had a history of domestic violence and CSB was also concerned about his ability to provide a stable home for his children.
On March 29, 2000, CSB moved for permanent custody of Justin and Marissa. Following an evidentiary hearing, the trial court granted CSB permanent custody of both children. Appellant timely appealed, asserting six assignments of error.
 II. Sixth Assignment of Error[3] The court improperly admitted evidence concerning Appellant's voluntary surrender of his other three children in Portage County over counsel's objection.
 Appellant has asserted that the trial court erred in admitting and considering evidence that he voluntarily surrendered custody of three older children to the Portage County of Department of Human Services ("DHS"). The trial court concluded that this evidence should be considered in its determination of whether the children should be placed with Appellant because it fell within the following factor set forth in a former version of R.C. 2151.414(E)(11) that became effective on March 18, 1999:
 The parent has had parental rights terminated pursuant to section 2151.353, 2151.414, or 2151.415 of the Revised Code with respect to a sibling of the child.
 The language quoted above, however, does not correspond to the version of R.C. 2151.414(E)(11) that was in effect at the time of the permanent custody hearing on June 14, 2000. R.C. 2151.414(E)(11) was amended, effective October 29, 1999, to include the word "involuntarily," thus applying only to involuntary terminations of parental rights pursuant to the enumerated statutes:
 The parent has had parental rights involuntarily
terminated pursuant to section 2151.353, 2151.414, or 2151.415 of the Revised Code with respect to a sibling of the child.
(Emphasis added.) R.C. 2151.414(E)(11).
Appellant has asserted that, because he voluntarily surrendered custody of his older children to DHS, the termination of his parental rights was not involuntary and, therefore, did not fall within the meaning of R.C.2151.414(E)(11).
Even if Appellant's argument is correct, the trial court did not err by considering the fact that Appellant voluntarily surrendered his parental rights to his older children. R.C. 2151.414(E)(16) provides that the court may base its decision that the children cannot be placed with either parent within a reasonable time or should not be placed with either parent on "[a]ny other factor the court considers relevant." Evidence that Appellant had previously surrendered three other children to the custody of a children services agency was relevant to the trial court's determination of whether Appellant's parental rights to Justin and Marissa should be terminated. Therefore, the trial court did not abuse its discretion by allowing, and considering, evidence that Appellant voluntarily surrendered the custody of three other children to the Portage County Department of Human Services. Appellant's sixth assignment of error is overruled.
 First Assignment of Error The trial court abused its discretion in ignoring or failing to follow the statutory requirements in the consideration of the motion for permanent custody filed by Children Services Board.
 Second Assignment of Error The trial court erred in its discretion to award permanent custody of the children as such decision was against the manifest weight of the evidence.
 Third Assignment of Error The trial court erred in its discretion to award permanent custody of the children as there was not sufficient evidence to support the decision.
 This Court will address the first three assignments of error together because Appellant has argued them jointly. Termination of parental rights is an alternative of last resort, but is sanctioned when necessary for the welfare of a child. In re Wise
(1994), 96 Ohio App.3d 619, 624. Before a juvenile court can terminate parental rights and award permanent custody of a child to the moving agency, it must find by clear and convincing evidence (1) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D), and (2) that one of four enumerated reasons exists for not returning the child to either of his parents: (a) the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, (b) the child is abandoned, (c) the child is orphaned and there are no relatives available to take the child, or (d) the child has been in the temporary custody of one or more children services agency for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999. See R.C. 2151.414(B)(1); see also, In re William S. (1996), 75 Ohio St.3d 95, 98.
Through his first three assignments of error, Appellant has challenged the trial court's finding on the second prong of the test, whether one of the statutory reasons exists for not returning the children to either parent. The trial court found that two of the enumerated reasons existed: (1) the children could not be placed with either parent within a reasonable time or should not be placed with either parent and (2) that the children had been in the temporary custody of one or more children services agency for twelve or more months of a consecutive twenty-two month period ending after March 18, 1999.
The trial court's finding that the children had been in temporary custody for twelve of the previous twenty-two months was not supported by the evidence. Because the record does not include any case filings prior to December 20, 1999, it is not clear exactly when the children were in the custody of CSB. One caseworker did testify, without providing specific dates, that the children had "been in care 15 out of the past 22 months." There is conflicting evidence of the specific dates that the children were in the custody of CSB, however. Although it appears that the children were removed from their home for a total of more than twelve months, removal alone does not satisfy the requirements of R.C.2151.414(D). R.C. 2151.414(D) provides that "a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28 of the Revised Code or the date that is sixty days after the removal of the child from the home." Using this definition, the evidence before the trial court did not establish that these children were in "temporary custody" of CSB for a full twelve months. Such a finding was not necessary, however, if the trial court properly found that the children could not be placed with either parent within a reasonable time or should not be placed with either parent. See R.C. 2151.414(B)(1).
When determining whether the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, the juvenile court must find by clear and convincing evidence that at least one of the enumerated factors in R.C. 2151.414(E) exists as to each of the child's parents. In re William S., 75 Ohio St.3d at 101. Those factors include:
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties[;]
* * *
 (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
* * *
(16) Any other factor the court considers relevant.
 R.C. 2151.414(E). The juvenile court should consider all relevant evidence when making such a determination. R.C. 2151.414(E). When a juvenile court finds by clear and convincing evidence that one of the enumerated factors in R.C. 2151.414(E) is present, the court must then conclude that the child cannot be placed within a reasonable time or should not be placed with the parent. In re Hammond (Feb. 16, 2000), Summit App. No. 19597, unreported, at 8. Clear and convincing evidence is that which will produce in the trier of fact "`a firm belief or conviction as to the facts sought to be established.'" In re Adoption of Holcomb (1985), 18 Ohio St.3d 361, 368, quoting Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
When evaluating whether a judgment is against the manifest weight of the evidence in a juvenile court, the standard of review is the same as that in the criminal context. In re Ozmun (Apr. 14, 1999), Summit App. No. 18983, unreported, at 3. In determining whether a criminal conviction is against the manifest weight of the evidence:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
 State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175. Moreover, "[e]very reasonable presumption must be made in favor of the judgment and the findings of fact [of the trial court]." Karches v. Cincinnati
(1988), 38 Ohio St.3d 12, 19. Furthermore, "if the evidence is susceptible of more than one construction, we must give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the [trial] court's verdict and judgment." Id. This Court has previously held that a determination that a finding is not contrary to the manifest weight of the evidence will also be dispositive of the issue of sufficiency. See Bowen v. Bowen (1999), 132 Ohio App.3d 616, 638.
There was ample evidence before the trial court to establish that Appellant "demonstrated a lack of commitment toward the [children] by failing to regularly * * * visit or communicate with [them] when able to do so." R.C. 2151.414(E)(4). Appellant had not visited Justin or Marissa for more than four months prior to the hearing. He had not even called to inquire about them for over two and a half months. Appellant testified that he could not attend scheduled visitations with his children because he worked every day and could not visit during his lunch hour because his workplace was a one-hour drive from Akron. According to Appellant, he started a new job less than two months before the hearing and he was required to work every day and could not take any time off until he had completed a ninety-day probationary period. Even if this were an acceptable reason to miss scheduled visitations,[4] it would only account for Appellant's failure to attend visitations for the seven weeks prior to the hearing. Appellant offered no explanation for why he had not visited his children for the ten weeks prior to starting his new job. Moreover, his work schedule would not explain his failure to make a phone call, write, or make any attempt to contact or inquire about his children. Given Appellant's unexplained failure to visit or communicate with his children for more than four months, the trial court reasonably concluded that Appellant demonstrated a lack of commitment toward these children.
The trial court also had before it evidence to establish that Appellant failed to substantially remedy the conditions that caused the children to be placed outside their home. Justin and Marissa were twice removed from their home because of their mother's substance abuse. They were not placed in Appellant's custody because he had a history of domestic violence and he had no independent housing. The primary goal of Appellant's case was to correct those two problems.
Appellant's history of domestic violence included numerous arrests and convictions for domestic violence and assault. There had been allegations that Appellant abused one of his older children and CSB suspected that he may have abused Beck's other child who had been removed from the home along with Justin and Marissa. Managing his anger and learning to maintain self-control were the primary goals that CSB set for Appellant. To accomplish those goals, Appellant was to complete an anger management course and also undergo a mental health assessment and pursue any recommended treatment. Appellant apparently completed the anger management course and had a mental health assessment. He did not, however, pursue any individual relationship counseling, as recommended by the assessment.
Appellant also had the goal of securing independent housing before the children could be placed with him. By "independent housing" CSB meant that appellant could not rely on friends or relatives to provide a home for his children; he was required to demonstrate that he could provide them a stable home. Throughout the sixteen months prior to the hearing, Appellant had lived in several different places, each time in the home of a friend or relative. He had not lived independently during the entire period. Appellant admitted at the hearing that he had not been able to accomplish that goal. He explained that he had been unable to secure housing because he has a criminal record. He pointed to only one apartment complex, however, where he had applied for housing and had been rejected due to his criminal record. A CSB caseworker testified that Appellant had never informed her that he was having trouble finding housing. Moreover, she testified that she had worked with other parents with criminal histories and that those parents had been able to find housing. At the time of the hearing, Appellant was living with his mother who had been disqualified for placement due to her own prior history with CSB. Appellant's mother had lost custody of him and his siblings after she left the children alone at night and a house fire killed one of Appellant's siblings.
There was also evidence of "[a]ny other factor the court considers relevant[,]" as previously mentioned in the discussion of the sixth assignment of error. Appellant voluntarily surrendered custody of three older children to the DHS after it had filed a motion for permanent custody. DHS had removed the children from Appellant's home following allegations that he had abused those children. Appellant surrendered custody of those children to DHS before the permanent custody hearing. While Appellant's decision not to fight for the custody of his older children did not necessarily substantiate the allegations of abuse, it did demonstrate a lack of parental commitment to those children.
Given all of the evidence detailed above, the trial court did not lose its way in determining that Justin and Marissa could not be placed with Appellant within a reasonable time or should not be placed with him. Appellant's first, second, and third assignments of error are overruled.
 Fourth Assignment of Error Children Services Board did not use reasonable and diligent efforts to reunify the family.
 Through his fourth assignment of error, Appellant has argued that CSB did not put forth reasonable and diligent efforts to reunify him with his children. Appellant has asserted that CSB was required to prove, at the permanent custody hearing, that it had exerted reasonable and diligent efforts to reunify the family. Appellant misconstrues the language of R.C. 2151.414(E)(1). As quoted above, R.C. 2151.414(E)(1) does refer to "reasonable case planning and diligent efforts by the agency[,]" but addresses those efforts within the context of the parent's failure to remedy the circumstances causing the child's removal from the home. R.C. 2151.414(E)(1) places no duty on the agency to prove that it exerted reasonable and diligent efforts toward reunification. In re Moore (Dec. 15, 1999), Summit App. Nos. 19202 and 19217, unreported, at 24-25.
Instead, it is R.C. 2151.419 that requires the agency to prove to the trial court "at any hearing held pursuant to [the statutes providing for the child's removal from the home]" that it made reasonable efforts to prevent removal of the children and to work toward reunification. The record reveals that, on March 17, 2000, when the trial court adjudicated the children dependent and placed them in the temporary custody of CSB, it approved and adopted a finding by a magistrate that CSB "has made reasonable efforts to prevent the continued removal of the children from their parents' care and custody."
The order dated March 17, 2000 was a final appealable order, but Appellant failed to timely appeal that order. See In re Murray (1990),52 Ohio St.3d 155, syllabus. Consequently, this Court is without jurisdiction to reach the issues disposed of at that time. Moreover, as it was a magistrate who made the finding that CSB had exerted reasonable efforts, any challenge to that finding must satisfy the requirements of Juv.R. 40. Juv.R. 40(E)(3)(b) states, in pertinent part, that "[a] party shall not assign as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding or conclusion under this rule." Because Appellant failed to raise a timely objection to the magistrate's finding, he failed to preserve this issue for appellate review even if he had perfected a timely appeal. The fourth assignment of error is overruled.
 Fifth Assignment of Error The trial court erred by granting CSB's motion for permanent custody as permanent custody was not in the children's best interests.
 Through his fifth assignment of error, Appellant has challenged the trial court's finding on the first prong of the test set forth in R.C. 2151.414, whether permanent custody to the agency is in the children's best interests. When determining whether a grant of permanent custody was in the children's best interest, the juvenile court was required to:
 [C]onsider all relevant factors, including, but not limited to, the following:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem [sic], with due regard for the maturity of the child;
(3) The custodial history of the child * * *;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; [and]
 (5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.
R.C. 2151.414(D).
The trial court did not lose its way in concluding that permanent custody to CSB was in the children's best interests. The children's interaction with Appellant had been nonexistent for the four months prior to the permanent custody hearing. Justin and Marissa were both under the age of three at the time of the hearing. They had spent most of their lives in the temporary custody of CSB or under its protective supervision. Although Appellant had visited with them regularly for a while, his contact with them had been sporadic or nonexistent for a significant portion of their young lives. The four-month period during which Appellant failed to visit with them constituted a significant portion of their lifetimes. Children of such young ages would have difficulty even remembering a parent whom they had not seen for four months. Maintaining regular contact during that period was crucial to developing any attachment. See In re Jefferson (Oct. 25, 2000), Summit App. Nos. 20092 and 20110, unreported, at 7. A CSB social worker testified that there was no bond between Appellant and the children. On the other hand, the children had developed bonds with their foster parents.
The guardian ad litem opined that Appellant could not provide a stable home for the children, noting that he had held eleven different jobs during the case plan period and that he had never secured independent housing, but instead had lived with several different relatives and friends. The guardian ad litem recommended that the children be placed in the permanent custody of CSB because that would be in their best interests.
The trial court reasonably concluded, based on this evidence, that it was in the children's best interests to be placed in the permanent custody of CSB. Appellant's fifth assignment of error is overruled.
 III.
Appellant's assignments of error are overruled. The judgment of the trial court is affirmed.
 —
The Court finds that there were reasonable grounds for these appeals.
We order that a special mandate issue out of this Court, directing the County of Summit, Court of Common Pleas, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
 ___________________________ BETH WHITMORE
BATCHELDER, P. J., REECE, J., CONCUR
(Reece, J., retired Judge of the Ninth District Court of Appeals, sitting by assignment pursuant to Section 6(C), Article IV, Constitution.)
[1] Appellant also had three children by another mother and Beck has one child by another father.
[2] There were apparently other court proceedings that transpired before this case was filed. According to the parties, this case was re-filed to meet statutory time constraints. The filings in the prior case, however, were never made part of the trial court record. Thus, most of the procedural background comes from the testimony of witnesses at the permanent custody hearing.
[3] This Court will address this assigned error out of order as it potentially impacts the analysis of the first three assignments of error.
[4] CSB attempted to dispute Appellant's claim that he could not take time off work to attend visitations with his children. There was no evidence of whether Appellant could have made other arrangements to visit the children if in fact he could not take time off work.