DECISION AND JOURNAL ENTRY.
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant Kelly M. Holcomb ("Kelly") has appealed from an order designating her ex-husband, Appellee Edward D. Holcomb ("Edward") residential parent and legal custodian of their two sons. This Court affirms.
 I.
On September 8, 1990, Kelly and Edward were married. During their marriage, the couple had two sons, Edward J. ("E.J."), born April 4, 1991, and Tyler, born February 24, 1994. The Holcombs were divorced on August 24, 1994. After the parties reached an agreement, the trial court named Kelly the residential parent and legal custodian of the two boys. Edward was to enjoy visitation on alternating weekends and holidays with unlimited phone conversation.
On March 3, 1997, Edward filed a Motion to Modify the Allocation of Parental Rights and Responsibilities and a Motion for Emergency Temporary Custody. Emergency Temporary Custody was denied, and the matter was set for hearing.
Prior to that hearing, on June 7, 1997, while the modification motion was still pending, Kelly was convicted of Driving Under the Influence. She had driven her car into a ditch. At the time of her arrest, Kelly had not eaten for two days and had a blood alcohol content of 0.25.
After the hearing concluded, the trial court filed a journal entry, setting forth its findings, conclusions and judgment. Specifically, the trial court found (1) that Kelly had had two live-in boyfriends since the divorce, one of which used corporal punishment to discipline the boys, (2) that Kelly was convicted of Driving Under the Influence, (3) that after Kelly had sent E.J. to live with Edward in Michigan, she accused Edward of trying to keep E.J. there permanently when she had only agreed to have him stay there temporarily, and, (4) that the boys had aged three and one half years since the previous order. The trial court further noted that the boys had different needs now than they did during 1994 and their father was better situated to satisfy those needs. Lastly, the trial court listed those factors it considered when determining whether a modification was in the boys' best interest. They included the following:
 (a) [Edward] wishes the minor children to be entrusted to his care and [Kelly] wishes the minor children to remain in her care;
 (b) The court has interviewed [E.J.], in chambers, regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities, and has considered those wishes and concerns;
 (c) [Edward] has remained very active with his visitations with the children, while there was testimony that [Kelly] left the children with their maternal grandmother and paternal grandparents for extended periods of time because she needed a break from their care. The children appear to get along well with one another and also with [Edward's] two step-children;
 (d) There does not appear to be any problems with the children's adjustment to their home, school or community;
 (e) There was no testimony that [Edward] suffered from any mental or physical ailments which would impede his ability to care for the minor children. There were indications that [Kelly] did not handle stress in her life in an appropriate manner; specifically, there was testimony that the D.U.I. citation was stress-related and that she would send the children to the grandparents for extended periods due to her inability to handle the stress of raising the children;
 (f) It appears that both parents are equally willing to facilitate the other parent's visitation;
* * *
 (j) [Edward] has an established residence in the State of Michigan, approximately two hours from the children's current residence.
The trial court then designated Edward as the residential parent, concluding that there had been a change of circumstances, that the modification was in the boys' best interest and that the benefits of a change of environment outweighed the likely harm. The order also established visitation rights for Kelly and denied her motion for attorney fees. The trial court filed its journal entry on March 23, 1999.
Thereafter, Kelly filed a timely request for findings of fact and conclusions of law. When the trial court failed to rule on her motion, Kelly filed a notice of appeal on April 21, 1999. This Court dismissed that appeal and remanded the matter, concluding that a final, appealable order had not yet been entered. Holcomb v. Holcomb (July 26, 2000), Lorain App. No. 99CA007346, unreported, at 3. On January 29, 2001, the trial court entered its findings of fact and conclusions of law. That entry stated that Kelly was not entitled to attorney fees because she had failed to present any evidence to justify such an award. The entry also stated that additional findings were not required because extensive findings had already been rendered in the March 23, 1999 journal entry.
Kelly timely appealed to this Court, asserting five assignments of error. Her first, second and third arguments have been consolidated for ease of discussion. The balance of her contentions will then be addressed.
 II. A. Custody First Assignment of Error The trial court abused its discretion and erred as a matter of law by failing to follow the mandates of R.C. 3109.04(E)(1)(a) and finding that a change of circumstances had occurred, which was against the manifest weight of the evidence.
 Second Assignment of Error The trial court abused its discretion and erred as a matter of law by failing to follow the mandates of R.C. 3109.04(F) and finding that a modification was necessary to serve the best interests of the children, which was against the manifest weight of the evidence.
 Third Assignment of Error The trial court abused its discretion and erred as a matter of law by failing to follow the mandates of R.C. 3109.04(E)(1)(a)(iii) and finding that the harm likely to be caused by the change of environment was outweighed by the advantages of the change of environment, which was against the manifest weight of the evidence.
In her first, second and third assignments of error, Kelly has essentially challenged the trial court's designation of Edward as residential parent. She has asserted that the trial court's factual finding that she sent the boys to live with their father in Michigan is not supported by competent, credible evidence. Kelly has also claimed that the trial court's legal conclusions, to wit: a modification of her parental rights was warranted because of a change in circumstances, it was in the best interests of the boys, and the benefits of changing environments outweighed the likely harm, are each unreasonable. Kelly has directed this Court's attention to several portions of the evidence, claiming that collectively it is not enough to sustain the trial court's ultimate decision. This Court disagrees.
Ohio law permits one parent to move a trial court to change the residential parent status established in a prior court order. R.C. 3109.04
governs the determination of whether the modification of residential parent status is warranted. The analysis is two-tiered. The initial inquiry is a factual one, while the second inquiry involves a legal question. Stated another way, a trial court must first determine, i.e. find, the factual circumstances surrounding the request and then, in light of its determination, apply the statute's dictates. The statute, specifically R.C. 3109.04(E), requires, in this regard: (1) a material change in circumstances of either the child or the residential parent; (2) the modification is certain to serve the best interest of the child; and, (3) one of the following:
 (i) The residential parent agrees to a change in the residential parent or both parents under a shared parenting decree agree to a change in the designation of residential parent.
 (ii) The child, with the consent of the residential parent or of both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent.
 (iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.
R.C. 3109.04(E)(1)(a). See, also, Davis v. Flickinger (1997),77 Ohio St.3d 415, paragraph two of the syllabus.
On appeal, when the trial court's factual conclusions are challenged, the review is whether those findings are supported by some competent, credible evidence. See Spinetti v. Spinetti (Mar. 14, 2001), Summit App. No. 20113, unreported, at 7 (applying the "competent, credible evidence" standard to factual findings underpinning classification of property as separate or marital); see, also, Masitto v. Masitto (1986),22 Ohio St.3d 63, 66 (applying the "some competent credible evidence" standard, as set forth in C.E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279, to the factual determination of whether a parent has relinquished his or her right to custody). "This standard of review is highly deferential and even `some' evidence is sufficient to sustain the judgment and prevent a reversal." Spinetti, supra, at 7, quoting Barkleyv. Barkley (1997), 119 Ohio App.3d 155, 159. Indeed, this Court is guided by a presumption that the findings of a trial court are correct, since the trial court is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use those observations in weighing the credibility of the proffered testimony. Spinetti, supra, at 7-8, citing Barkley, 119 Ohio App.3d at 159.
On the other hand, a trial court's application of R.C. 3109.04(E)(1) to the facts of a particular case will not be disturbed on appeal absent an abuse of discretion. Davis, 77 Ohio St.3d at paragraph one of the syllabus. An abuse of discretion is more than mere error; it implies that the trial court's attitude was "unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
In this instance, the trial court found that Kelly sent E.J. to live with Edward, then changed her mind and cast Edward's actions as deceptive. The trial court then held that the evidence adduced during the hearing demonstrated that there had been a change in circumstances since the parties' divorce, that a change of residential parent was in the boys' best interest, and that the harm to them caused by that change was outweighed by the advantages. Each conclusion will be addressed in turn.
 1. Factual Finding
At the hearing, Edward testified that on the weekend in question, Kelly told him that he could have custody of E.J. and would send his records so that the enrollment process could continue. According to Edward, Kelly instructed her mother to pack E.J.'s personal items. He further stated that he then drove Tyler back to Ohio on Sunday and picked up all of E.J's clothes which were delivered to him by Kelly's mother. Kelly, on the other hand, testified that once E.J. was in Michigan, Edward called her and asked if E.J. could stay temporarily because he had broken-out with chicken-pox. She testified that she agreed in an effort to appease Edward and because her other son was also ill. Kelly claimed that she forwarded E.J.'s medical and personal records to Michigan so he could receive treatment. Based on the foregoing, this Court concludes that the record contains some competent, credible evidence to support the trial court's finding.
 2. Change in Circumstances
Aside from the challenge raised as to whether Kelly "sent" E.J. to live with Edward, the balance of the facts in this case are undisputed. Upon review of these facts, the trial court did not abuse its discretion by holding that a change in circumstances had taken place since the initial court order.
Kelly has argued that the factual dispute over whether she "sent" E.J. to live with Edward does not contribute to or warrant a finding that the circumstances had changed. On the contrary, the dispute evidences, at a minimum, a slight change in the parties' relationship, ability to facilitate exchanges and willingness to cooperate under the previous custodial and visitation arrangement.
Next, Kelly has taken issue with the trial court's reference to her two live-in boyfriends. In its order, the trial court merely recognized the impact the introduction of these men into her household had on the boys. The presence of these men resulted in the disruption of visitation and several changes in residence. It also meant that, at times, discipline in the form of corporal punishment was administered to the boys by someone other than their parents. There is nothing in the record that would indicate that the trial court "passed judgment" on her relationships with these two men.
Kelly has also argued that the trial court placed too much emphasis on her Driving Under the Influence conviction as that was an isolated event and just a mistake. The record demonstrates that this "mistake" began when she decided to handle the stress of this custody battle by fasting for two days and then consumed alcohol to the point where she could not operate a motor vehicle. She, in turn, chose to drive and ended up in a ditch. She further compounded the mistake when she drove her children home from Edward's home in Michigan after her driver's license had been suspended. Such mistakes had not been made prior to the parties' divorce during 1994.
Lastly, Edward has directed this Court's attention to the fact that the boys had aged over three years since the initial decree. They were ages six and three at the time Edward moved for custody.
When these all changes are viewed collectively they constitute a material change, or a "change in substance." See Davis,77 Ohio St.3d at 420 (holding that even a small change in age, when combined with hostility between the parents that adversely affects the visitation or custody arrangement, may constitute a significant change in circumstances to warrant a change in custody). The trial court's conclusion, i.e. that a change in circumstances had transpired, was not unreasonable, arbitrary or unconscionable. Kelly's arguments to the contrary are without merit.
 3. Best Interest
Next, Kelly has argued that the designation of Edward as residential parent was not in the boys' best interest. She has claimed that the trial court purported to review the requisite considerations, but "skewed and mischaracterized testimony to fit within its ruling." In short, she has assailed the evidence which the trial court highlighted in its journal entry, claiming that the evidence was not credible.
R.C. 3109.04(F)(1) provides a nonexclusive list of considerations in determining the best interest of a child:
 In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:
 (a) The wishes of the child's parents regarding his care;
 (b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
 (c) The child's interaction and interrelationship with his parents, siblings, and any other person who may significantly affect the child's best interest;
 (d) The child's adjustment to his home, school, and community;
 (e) The mental and physical health of all persons involved in the situation;
 (f) The parent more likely to honor and facilitate visitation and companionship rights approved by the court;
 (g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;
 (h) Whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;
 (i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent his or her right to visitation in accordance with an order of the court;
 (j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.
In the instant case, the trial court specifically mentioned each of these factors, determined their relevance to the case and detailed its findings. This Court does not believe that the trial court skewed the evidence one way or the other. The trial court simply considered the relevant factors and reached a conclusion contrary to Kelly's position. The trial court did not abuse its discretion in finding that a modification was in the boys' best interest under the circumstances presented by this case.
 4. Change of Environment
Kelly has also argued that the trial court's determination that the benefits of transferring custody of the boys to Edward outweighed its harm was improper. She has claimed that the trial court failed to explain or discuss this finding. Indeed, she has maintained that the journal entry offered no explanation as to why it was more advantageous than harmful for the boys to live in Michigan with their father and his new family, as opposed to staying in Ohio near their mother, grandparents, friends and school. She further asserted that she has provided a "stable home environment" for the boys and that they have experienced no problems in school.
This Court rejects Kelly's arguments. First, the trial court expressly took into consideration the boys' success in school. Second, based on the turmoil Kelly introduced into the boys lives, her assertion that she provided a stable environment is not credible. She hosted parties which left her home littered with beer cans and cigarette stubs, had several live-in boyfriends, moved the boys from house to house, received a D.U.I. conviction and then drove the boys home from out-of-state while her driver's license was under suspension. In addition, the trial court expressly set forth its considerations as to the positive things Edward would contribute to the boys' lives. The determination that the benefits of transferring custody outweighed the harm was not arbitrary, unreasonable or unconscionable.
Based on the foregoing, this Court cannot conclude that the trial court abused its discretion in determining that there had been a change in circumstances since the divorce, that a change of residential parent was in the boys' best interest, and that the harm to them caused by the change was outweighed by the advantages. Kelly's first, second and third assignments of error are not well taken.
 B. Visitation Fourth Assignment of Error The trial court abused its discretion and erred as a matter of law by only awarding [Kelly] the court's minimum standard order of visitation.
In her fourth assignment of error, Kelly has called into question the trial court's award of visitation for two reasons. First, she has argued that the trial court failed to consider the best interest of the boys. Second, she has argued that one-day visitation periods on certain holidays are unfair and harmful due to the fact that Edward resides two hours from her. Both arguments fail.
This Court begins by noting that R.C. 3109.051 controls the modification of parental visitation rights. Braatz v. Braatz (1999),85 Ohio St.3d 40, paragraph one of the syllabus. That statute requires a trial court to consider fifteen enumerated factors in R.C. 3109.051(D), and then, in its sound discretion, determine a visitation plan that is in the best interest of the child. Id. at paragraph two of the syllabus. Absent an abuse of that discretion, a trial court's modification of parental visitation rights will not be disturbed on appeal. See id. at 45, citing Booth v. Booth (1989), 44 Ohio St.3d 142, 144; In re Whitaker
(1988), 36 Ohio St.3d 213, 217; and, Appleby v. Appleby (1986),24 Ohio St.3d 39, 41.
Kelly has not challenged whether the trial court took into consideration the fifteen factors listed in R.C. 3109.051. Instead, she attacks the trial court's visitation modification, claiming that the best interest of the boys was never considered. However, as discussed supra, the trial court went to great lengths to detail his consideration of the "best interest" factors set forth in R.C. 3109.04.
As for Kelly's second point, this Court concludes that the trial court did not abuse its discretion in allowing visits from nine in the morning to eight in the evening on certain holidays. Granted, if she chooses to drive the boys back to Ohio, they will be forced to spend approximately four hours traveling in a motor vehicle. However, the permitted eleven hour time frame is warranted in light of the boys respective ages and their need to be in bed. And as Edward noted, Kelly may spend the day in Michigan with her two sons. The trial court's decision in this regard was not unreasonable, arbitrary or unconscionable. Kelly's fourth assignment of error is without merit.
 C. Attorney Fees Fifth Assignment of Error The trial court erred as a matter of law by failing to award attorney fees on behalf of [Kelly].
In her final assignment of error, Kelly has argued that the trial court erred by denying her motion for attorney fees. Edward has countered, claiming that the trial court did not abuse its discretion because Kelly has chosen not to work and relies on her live-in boyfriend's income.
An award of attorney fees in a divorce proceeding is governed by R.C.3105.18(H), which provides:
 In divorce or legal separation proceedings, the court may award reasonable attorney's fees to either party at any stage of the proceedings, * * * if it determines that the other party has the ability to pay the attorney's fees that the court awards. When the court determines whether to award reasonable attorney's fees to any party pursuant to this division, it shall determine whether either party will be prevented from fully litigating that party's rights and adequately protecting that party's interests if it does not award reasonable attorney's fees.
(Emphasis added.) The trial court must make its determination in an equitable and fair manner which serves the ends of justice. Bowen v.Bowen (1999), 132 Ohio App.3d 616, 642, appeal not allowed (1999),86 Ohio St.3d 1402, quoting Farley v. Farley (1994), 97 Ohio App.3d 351,357-358. This Court reviews a trial court's decision as to attorney fees under the abuse of discretion standard. Bowen, 132 Ohio App.3d at 642; see, also, Rand v. Rand (1985), 18 Ohio St.3d 356, 359.
Here, the stipulated, combined annual income of Edward and his new wife is $73,000. On the other hand, Kelly has recently quit her job and relies solely on her live-in boyfriend's income. However, no evidence of his income was presented. As a result, this Court is unable, as was the trial court, to determine whether Kelly will be prevented from fully litigatingher rights and adequately protecting her interests without financial assistance. Thus, this Court has no choice but to conclude that the trial court's denial of attorney fees was not an abuse of discretion.
 III.
Kelly's assignments of error are overruled. The judgment of the trial court is affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the County of Lorian, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Lorian.
Exceptions.
BATCHELDER, P.J., CARR, J. CONCUR.