This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made.
{¶ 1} Appellant/Cross-Appellee Christopher Arn ("Husband"), and Appellee/Cross-Appellant, Pamela Arn ("Wife"), appeal from the judgment of the Summit County Court of Common Pleas, Domestic Relations Division, which granted them a divorce and determined a property division. We affirm in part, reverse in part, and remand for further action.
 I. {¶ 2} Husband and Wife were married on June 23, 1979. They have three children, all adults. On May 26, 2000, Wife filed a complaint for divorce. The parties entered into a voluntary stipulated temporary order allocating their rights, debts, and assets, which order was to remain in effect through February 5, 2001. Trial was set for March 27, 2001; Wife asked to have the stipulated temporary order remain in effect until the trial was conducted. Husband objected, claiming that the financial burden was too onerous. The magistrate continued the temporary order, stating that temporary orders remained in effect until modified or superceded by a divorce decree after trial, that it was the parties' own agreement presumably entered into in good faith, and that Husband's claim he could not maintain his lifestyle under the temporary order was of no weight. On June 28, 2001, the parties conducted a trial before the magistrate to determine the property division. The magistrate's decision, filed September 5, 2001, made findings of facts and conclusions of law subsequently adopted by the domestic relations judge. Husband and Wife both filed objections to the magistrate's decision. The domestic relations judge overruled all objections except one: the judge sustained Husband's objection to the failure to include Wife's death as a reason to terminate spousal support. The sustained objection is not part of this appeal.
 {¶ 3} Prior to the trial, neither party had the marital resident appraised. Wife testified that the fair market value was $275,000 while Husband, in his trial brief, set the value at $279,500. The magistrate split the difference and found the fair market value to be $277,250. After subtracting stipulated outstanding mortgage and home equity line of credit balances, the magistrate set the marital equity at $85,715.
 {¶ 4} Husband and Wife sold 21 acres of land and a horse barn, which sale had not yet closed at the time of trial. After deducting the existing mortgage, the magistrate found the estimated net proceeds to be $59,391.00, making each party's share $29,695.50.
 {¶ 5} Husband was in arrearage on the stipulated temporary order in the amount of $11,268.00, which arrearage was reduced to a judgment for Wife on June 15, 2001. The magistrate, stating that Husband had acted in bad faith, reduced the share of Husband's equity interest in the sale of the land and horse barn by $11,268.00, rendering his share worth $18,427.50.
 {¶ 6} The magistrate found that the parties each own 50% of a limited liability corporation, named 978 LLC, whose sole asset is real estate located at 610 Walnut Street SE, in Canton, Ohio. Wife testified that the real estate was worth $300,000; Husband did not express an opinion regarding the fair market value of the real estate. The magistrate found the real estate to be valued at $300,000, with a total equity of $146,270.
 {¶ 7} The magistrate found that Husband's company, the Martinat Wine Company (the "corporation") was a marital asset valued at $1,177,000 after outstanding debts were subtracted. In acquiring the corporation in 1991, Husband purchased 20% of the stock for $65,000 from Barbara and Arthur Rosenstock ("Rosenstocks").[1] In 1994, Husband then entered into an agreement to purchase the balance of 80% of the corporation's stock pursuant to a Stock Redemption Agreement ("sale agreement"). At the time Wife filed for a divorce, Husband was current on all payments and obligations to the Rosenstocks, pursuant to the sale agreement. Under the terms of the sale agreement, Husband was to own 100% of the corporation, with the balance due and owing to the Rosenstocks for the purchase price in the amount of $630,000. Shortly before the initial trial date in March 2001, the Rosenstocks issued a notice of default to the corporation indicating that Husband had breached the sale agreement. At the time the notice of default was issued, Husband was current on all monthly payments. The magistrate found that the notice of default was contrived for purposes of the divorce and was not credible for the following reasons: Husband had been operating the corporation as his own company since 1994; there was a close personal relationship between the Rosenstocks and Husband; the corporation purchased 21 acres of land adjacent to the marital residence and the land was not used for any corporation business, yet the Rosenstocks did not issue a notice of default at the time the company purchased that land; the corporation had higher profits each year that Husband operated the corporation for the Rosenstocks; two days before the July trial date, Husband and the Rosenstocks entered into a new sale agreement whereby Husband pledged his share of the corporation's stock to the Rosenstocks as security for the unpaid purchase balance; in doing so, Husband and the Rosenstocks were in violation of the restraining orders issued by the court.
 {¶ 8} Therefore, the magistrate found that Husband had acted in bad faith because he failed to comply with the stipulated temporary orders, and because he violated the restraining order when he encumbered his share of the corporation. Further, Husband was found in contempt for failing to comply with the stipulated temporary orders.
 {¶ 9} Additionally, the magistrate found that the bad faith of Husband resulted in difficult questions, excessive time and labor, and novel and difficult circumstances in the litigation of this case. Therefore, the magistrate found Wife's request for attorney and expert's fees to be reasonable and appropriate.
 {¶ 10} Husband appealed raising five assignments of error, alleging error in the fact-finding, the application of R.C. 3105.18, and the award of attorney and expert's fees to Wife. Wife cross-appealed raising one assignment of error, claiming that the property settlement award should have included interest. We affirm on Husband's assignments of error, and reverse and remand on Wife's assignment of error. We rearrange and combine some of Husband's assignments of error for ease of discussion.
 II. Standard of Review {¶ 11} When reviewing the equity of a division of property, an appellate court cannot disturb the trial court's judgment on appeal without a showing that the common pleas court abused its discretion in formulating the division of the marital assets and liabilities of the parties. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 218; Koegel v.Koegel (1982), 69 Ohio St.2d 355, 357. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable."Blakemore, 5 Ohio St.3d at 219.
 Husband's Assignment of Error No. 1.
"The trial court erred as a matter of law and abused its discretion to the prejudice of the appellant-cross appellee in the formation of the property division. The property division award to the appellee-cross appellant is excessive and contrary to R.C. 3105.171."
 Husband's Assignment of Error No. 2.
"The trial court erred and abused its discretion in its order which requires appellant-cross appellee to pay all of the marital indebtedness except for the first and second mortgages encumbering the marital residence. The court further erred and abused its discretion by not factoring the marital indebtedness into the property division which purportedly represents an equal division of property."
 Husband's Assignment of Error No. 5.
"The court erred and abused its discretion to the prejudice of appellant-cross appellee in its findings that appellant-cross appellee was guilty of financial misconduct and bad faith throughout the [pendency] of this case and that he had violated the temporary orders of [the] court."
 {¶ 12} In his first assignment of error Husband claims that the ultimate property division is unlawful because the magistrate erred in the fact-finding. First, Husband objects to the value of the corporation as found by the court. While Husband does not quarrel with the total value of the corporation as found by the magistrate, he argues he owned only 34.25% of the corporation and the property division should have been predicated upon that figure. Husband also argues that, contrary to the magistrate's finding that his expert witness was not credible, his expert witness was involved in his professional capacity as the accountant for the corporation with first-hand knowledge of the corporation and its records, and the expert's calculation of the value of the corporation was based upon a mathematical calculation incorporated into the 1994 sale agreement. Further, Husband argues that the fair market value of the corporation should have been based upon IRS Revenue Ruling 59-60 which allows for certain discounts for minority interests and marketability of the stock. In addition, Husband states that the stock shares in escrow will not transfer to Husband until the payment of $630,000 occurs, making him a minority shareholder and not the owner of 100% of the company. Husband states that these findings as applied make the property settlement contrary to R.C. 3105.171.
 {¶ 13} In his second assignment of error, Husband argues that the property division is not equal due to the allocation of debt by the court. Husband states that the parties jointly incurred debt to acquire the corporation. Further, Husband claims to have borrowed additional funds to pay support. He also claims that there is further joint indebtedness for student loans and credit card debt which was allocated to Husband without adjustment to the property division.
 {¶ 14} In his fifth assignment of error, Husband argues that the trial court issued an order to continue the stipulated temporary support even though Husband stated he had to borrow money to meet the obligation. He also claims that he did not pledge his stock from the company and therefore it was error to find him in violation of the restraining order. Husband states that he had retained counsel to attempt to get the notice of default withdrawn, which proves that he was acting in good faith.
 {¶ 15} Appellants shall include in their brief reasons in support of each assignment of error presented for review, with citations to the parts of the record and to authorities on which appellant relies. App.R. 16(A)(7). See, also, App.R. 16(D). An appellate court may decline to address any alleged error where the appellant has failed to comply with App.R. 16. Carrick v. Akron Dept. of Pub. Health Appeals Bd. (Apr. 10, 2002), 9th Dist. No. 20776, at 5, appeal not allowed (2002),96 Ohio St.3d 1469. Unsubstantiated assertions are not considered on appeal to be sufficient to carry the burden of proving an abuse of discretion. Frecska v. Frecska (Oct. 1, 1997), 9th Dist. No. 96CA0086, at 3-4. "It is not the duty of this court to search the record for evidence to support an appellant's argument as to alleged error." Gest v. Gest
(Apr. 19, 1998), 9th Dist. No. 96CA006580, at 3-4.
 {¶ 16} In all the above assignments of error, Husband bases his arguments upon discrepancies in his version of the facts and the court's ultimate findings. However, Husband fails to make any references to the parts of the record which may support his version of the facts. Because he has failed to do so, we decline to address the factual issues proposed in these assignments of error.
 {¶ 17} The sole legal issue presented is whether the property settlement is contrary to R.C. 3105.171. R.C. 3105.171(C)(1) states:
"[T]he division of marital property shall be equal. If an equal division of marital property would be inequitable, the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable. In making a division of marital property, the court shall consider all relevant factors, including those set forth in division (F) of this section."
 {¶ 18} R.C. 3105.171(F) states:
"In making a division of marital property and in determining whether to make and the amount of any distributive award under this section, the court shall consider all of the following factors:
"(1) The duration of the marriage;
"(2) The assets and liabilities of the spouses;
"(3) The desirability of awarding the family home, or the right to reside in the family home for reasonable periods of time, to the spouse with custody of the children of the marriage;
"(4) The liquidity of the property to be distributed;
"(5) The economic desirability of retaining intact an asset or an interest in an asset;
"(6) The tax consequences of the property division upon the respective awards to be made to each spouse;
"(7) The costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property;
"(8) Any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses;
"(9) Any other factor that the court expressly finds to be relevant and equitable."
 {¶ 19} A review of the trial court's post-decree judgment entry, which addresses the objections to the magistrate's order, shows that, in considering the property division, the court looked at the value and disposition of several assets including the marital home, the commercial real estate, the company (taking into consideration the bad faith conduct of Husband regarding the company), and the distribution of marital debt. The magistrate's division of property shows that Wife's assets (net after marital debt was subtracted) amounted to $253,777, and Husband's was (net after marital debt was subtracted) was $1,340,207. To achieve equity, the magistrate ordered that Husband pay Wife $543,215, so that the total property to each was valued at $796,992. Because the magistrate was concerned about forcing a sale of the company if a lump sum payment were ordered, the property settlement payment to Wife was apportioned over several years. Therefore, the property division was conducted according to R.C. 3105.171.
 {¶ 20} The first, second and fifth assignments of error are overruled.
 Husband's Assignment of Error No. 3.
"The trial court erred and abused its discretion in the spousal support award both as to the amount and duration thereof."
 {¶ 21} In his third assignment of error, Husband states that the spousal support award is erroneous as a matter of law because the trial court did not apply all the factors of R.C. 3105.18(C)(1). Further, Husband alleges that the trial court erred in its findings regarding those factors it did consider, specifically the amount of Husband's annual income from the corporation and from rent he received through 978 LLC. Husband also claims that it was error for the trial court to find that cash withdrawals from the corporation were income, when in fact they were loans. Husband states, also, the court did not take into account Wife's employment income, or that Husband has paid Wife approximately $150,000 to satisfy the stipulated temporary order.
 {¶ 22} As discussed in the prior assignments of error, Husband does not refer to the record to support his version of the facts. Therefore, we will confine our review to the legal question contained in this assignment of error: whether the trial court applied the factors of R.C. 3105.18(C)(1) in determining support.
 {¶ 23} R.C. 3105.18(C)(1) contains a list of factors to be included in a decision for support. The statute states in pertinent part:
"(C)(1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:
"(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171, of the Revised Code;
"(b) The relative earning abilities of the parties;
"(c) The ages and the physical, mental, and emotional conditions of the parties;
"(d) The retirement benefits of the parties;
"(e) The duration of the marriage;
"(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
"(g) The standard of living of the parties established during the marriage;
"(h) The relative extent of education of the parties;
"(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
"(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
"(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
"(l) The tax consequences, for each party, of an award of spousal support;
"(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
"(n) Any other factor that the court expressly finds to be relevant and equitable."
 {¶ 24} This Court has previously held that "once the fourteen factors [under R.C. 3105.18(C)(1)] have been considered, the amount of spousal support is within the sound discretion of the trial court." Bowenv. Bowen (1999), 132 Ohio App.3d 616, 626. "A trial court is not required to enumerate each factor in R.C. 3105.18(C)(1), but must merely provide a sufficient basis to support its award." Smith v. Smith (Dec. 5, 2001), 9th Dist. No. 20519, at 4, citing Rowe v. Rowe (1990), 69 Ohio App.3d 607,615.
 {¶ 25} The magistrate's order, and the trial court's post-decree journal entry, both delineate the factors of R.C. 3105.18(C)(1). The magistrate's order listed findings as to the relevant factors of the statute. The trial court's post-decree journal entry likewise lists all the factors, indicates how they were applied, and what conclusions were reached. The post-decree order specifically states that "[t]he transcript reveals that this case satisfies the factors set forth in R.C. §3105.18(C)(1)." The trial court, in the order, then lists what findings were relevant to the factors, and concludes that the record substantiates the support award. Therefore, the trial court considered all the relevant factors of R.C. 3105.18(C)(1). Husband's third assignment of error is overruled.
 Husband's Assignment of Error No. 4.
"The trial court erred and abused its discretion in its order that appellant-cross appellee pay to the appellee-cross appellant attorney fees in the amount of $35,000.00 and expert fees in the amount of $15,000.00."
 {¶ 26} Husband argues that the award of attorney fees was unreasonable and excessive because it is an abuse of discretion to award fees if the evidence does not include the attorney's billing rate, its reasonableness, an itemization of the time expended and that the time was reasonably necessary. Instead, Husband claims the award was based upon an affidavit which did not include a table of time expended. Husband further states that the court did not conduct a hearing on the matter pursuant to the local rules, but based the award of fees solely upon the affidavit. Therefore, Husband contends the factors to be considered under the local rules were not employed in determining the award. Thus, according to Husband, the domestic court did not follow its own rules regarding a request for attorney fees. Husband contends that the trial court did not follow the Code of Professional Responsibility in determining the reasonableness of the fees awarded. Finally, Husband claims that the award of expert fees does not fall within R.C. 3105.18 and the award was unreasonable.
 {¶ 27} We first address the issue of attorney fees.
 {¶ 28} R.C. 3105.18(H) states:
"In divorce * * * proceedings, the court may award reasonable attorney's fees to either party at any stage of the proceedings * * * if it determines that the other party has the ability to pay the attorney's fees that the court awards. When the court determines whether to award reasonable attorney's fees to any party pursuant to this division, it shall determine whether either party will be prevented from fully litigating that party's rights and adequately protecting that party's interests if it does not award reasonable attorney's fees."
 {¶ 29} Generally, the party retaining the attorney bears the burden of paying the attorney. Bowen, 132 Ohio App.3d at 642. Nonetheless, in a divorce proceeding, an award of attorney's fees is governed by R.C. 3105.18(H), which states that the "[trial] court may
award reasonable attorney's fees to either party * * * if * * * the other party has the ability to pay." (Emphasis added). Furthermore, the court must consider "whether either party will be prevented from fully litigating that party's rights and adequately protecting that party's interests if it does not award reasonable attorney's fees." R.C.3105.18(H). The trial court's decision regarding attorney's fees must be equitable, fair, and serve the ends of justice. Bowen,132 Ohio App.3d at 642. An appellate court will only disturb a trial court's decision as to attorney's fees if the trial court abused its discretion. Id.
"If the parties do not agree to payment of attorney's fees, the party seeking payment shall do so by a written motion or in another pleading, accompanied by a notice of hearing, pursuant to these rules and the Rules of Civil Procedure. * * * At a hearing on a request for attorney's fees, either party shall be prepared to present evidence or stipulations * * * with respect to the following matters:
"(A) The source of funds from which attorney's fees are to be paid.
"(B) The ability of the non-moving party to pay such fees.
"(C) The movant's need for payment of attorney's fees.
"(D) The reasonableness of the attorney's fees requested." Loc.R. 14 of the Court of Common Pleas of Summit County, Domestic Division.
 {¶ 30} Failure to raise an issue at the trial court level usually precludes this Court from reviewing the issue. State v. Quine, 9th Dist. No. 20968, 2002 Ohio 6987, at ¶ 7. A failure to object waives all but plain error. See State v. Coley (2001), 93 Ohio St.3d 253, 266.
 {¶ 31} A review of the transcript shows that Husband was asked about legal expenses and indicated that he did not know how much his were. Wife's attorney then addressed the court, saying, "We'll both submit affidavits when you're done, your Honor." At no time did Husband object to this procedure, therefore he has waived any error on the issue of submitting affidavits in lieu of a hearing to determine attorney's fees under the local rules. Further, the factors listed in the local rule are guidelines for the parties to follow when presenting evidence at a hearing and are not factors which bind the court. Finally, Husband has not demonstrated that a hearing on attorneys' fees would have resulted in a different award, especially given that the trial was a full litigation of all the assets and liabilities of both parties.
 {¶ 32} The affidavit submitted by Wife's attorney addressed each item listed in the Code of Professional Responsibility, to wit: the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal services promptly; the fee customarily charged in the locality for similar legal services; the amount (value) involved in the litigation and the results obtained; the time limitations imposed by the client or by the circumstances; and the experience, reputation and ability of the lawyer in rendering services in family law and related matters.
 {¶ 33} In the post-decree order, the trial court found that due to a disparity in incomes, Wife could not fully litigate her rights and adequately protect her interests without an award of reasonable fees from Husband, who had ample income to pay Wife's attorney. In addition, the trial court found that much of the complexity of the case was owing to Husband's bad faith. We find no abuse of discretion in the trial court's award of attorney's fees to Wife.
 {¶ 34} We now address the award of the expert's fees to Wife.
"If a spouse has engaged in financial misconduct, including but not limited to, the dissipation, destruction, concealment or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property." R.C.3105.171(E)(3).
"`Distributive award' means any payment or payments * * * that are made from separate property or income, and that are not made from marital property and do not constitute payments of spousal support as defined in section 3105.18." R.C. 3105.171(A)(1).
 {¶ 35} "The court may issue any orders under this section that it determines equitable * * *." R.C. 3105.171(J).
 {¶ 36} Whereas R.C. 3105.18 does not address an award of expert fees, such an award can be considered a distributive award under R.C.3105.171(A)(1) and (E)(3). The expert fees could also be granted under the equitable catch-all of R.C. 3105.171(J). R.C. 3105.171 does not impose a "reasonableness" requirement upon a distributive or an equity award.
 {¶ 37} Much was made of Husband's machinations with the stock of the company in violation of a restraining order, and both the magistrate and the trial court found that Husband engaged in financial misconduct and acted in bad faith in that regard. Further, both found that the bad faith actions of Husband complicated the division of marital property. Both parties' experts were utilized to determine the status and ownership of the shares in light of Husband's actions. Given the findings by the magistrate and the trial court relative to financial misconduct and bad faith, in addition to the discretion granted by R.C. 3105.171(J) to issue orders which are equitable, we find no abuse of discretion in the award of the expert's fees to Wife.
 {¶ 38} Husband's fourth assignment of error is overruled.
 Wife's Cross Assignment of Error
"Where the property settlement order calls for payments over a period of 14 years with a 7 year delay before the payments are even commenced, the trial court abuses its discretion in failing to include a reasonable interest rate in connection with such payments and did in fact abuse its discretion in this case."
 {¶ 39} In her sole assignment of error, Wife claims that because Husband's property settlement payments to Wife will not begin until 88 months after the final decree and then will continue in periodic payments over another 88 months, it is necessary to award interest on those payments in order for the settlement to be equal. Wife states that the lack of interest on the future payments results in a present value to her of $483,747.65 as compared to a distribution to Husband of $1,110,236.35. Husband responds that "[a] review of both the Magistrate's Decision dated September 6, 2001, and the Judgment Entry dated April 15, 2002, will demonstrate that the property division was equal."
 {¶ 40} "Whether to award interest upon obligations arising out of the division of marital property is within the discretion of the trial court." Koegel, 69 Ohio St.2d 355 at syllabus.
 {¶ 41} In denying Wife's request for interest, the trial court stated, "As for the award of interest, this Court cannot project Martinat Wine Company's growth or digression over the next seven years. It may be the case that [Wife] receives $543,215 over the next 88 months and [Husband's] corporation significantly decreases in value throughout this period." We do not find this reasoning persuasive on the issue of interest on the settlement to Wife. The future value of the company has no bearing upon this issue; the basis of the award to Wife is the present value of the company. Under the terms of the award, it will be more than fourteen years before Wife receives all that is her due. During the 88 months until payment commences, and during the 88 months of payments, Husband will have the use of money and property that Wife cannot use. Furthermore, the true value of the monthly payments decreases each succeeding month. Husband's response that the property division is equitable is disingenuous considering his arguments in his five assignments of error. Therefore, we find that the trial court abused its discretion when it did not award interest to Wife on the property settlement payments, and we remand for the trial court to either award a competitive interest rate or to adjust the property settlement so as to result in compliance with R.C. 3105.171.
 {¶ 42} Wife's assignment of error is sustained.
 III. {¶ 43} Husband's assignments of error are overruled. Wife's assignment of error is sustained. The judgment of the Summit County Court of Common Pleas, Domestic Relations Division, is affirmed in part, and reversed in part, and the cause is remanded for further action.
Judgment affirmed in part, reversed in part and cause remanded.
Carr, J. and Whitmore, J. concur.
[1] The Rosenstocks were named defendants in the divorce action.